# ALOMAR & ASSOCIATES, PC
# ATTORNEYS & COUNSELORS AT LAW

**KARINA E. ALOMAR, ESQ**
*ALSO ADMITTED IN NJ, FL
E-Mail: alomar.associatespc@gmail.com

60-89 Myrtle Avenue
Ridgewood, N.Y. 11385
Tel: (718) 456-1845
Fax: (718) 386-9299

November 9, 2009

The Honorable Sterling Johnson
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

RE: USA v. Thomas Archer and Rukhsana Rafique
08-CR-288(s-1)(SJ)

Dear Judge Johnson:

Please accept this letter as a joint motion for the defendants, Thomas W. Archer and Ruksana Rafique, in opposition to the Government's motion in limine that it be granted permission to admit in their case in chief the videotaped deposition of its witness Rahul Gupte.

## I. Preliminary Statement

The defendants, Thomas W. Archer and Rukhsana Rafique, are charged with one count of conspiring to commit visa fraud in violation of 18 U.S.C. §371, and four counts of visa fraud in violation of 18 U.S.C. §1546(a). Both Archer and Rafique deny the Government's claims that they conspired or did knowingly prepare and submit false I-687 applications.

On April 27, 2009, the Government moved for permission to take Rahul Gupte's deposition, hereinafter referred to as Gupte. Upon information and belief, Gupte is one of the clients identified in counts 2 through 5 of the indictment. The Government argued that that the deposition was warranted because they had already lost a witness in the case and that Mr. Gupte, who was in removal proceedings, wanted to leave the United States.

The Defense opposed both the deposing of Gupte and the introduction of his videotaped deposition at trial. On June 22, 2009, the Court granted the Government's request to depose Gupte, but denied their request to introduce the deposition at trial. The Court ruled that the issue of whether or not the witness was unavailable was premature. The Court then deferred the issue of Gupte's unavailability for trial. The decision of June 22, 2009, was handed to both the Government and Defense who were present in Court at which time the trial date was scheduled.

Pursuant to the Court's June 22, 2009 order, the deposition of Gupte took place on August 11, 2009. Upon information and belief, at the time of Gupte's deposition the Government had yet to serve Gupte with a subpoena to testify at trial, despite the fact that the trial had been scheduled (50) days prior to the deposition, on June 22, 2009.

The Government provided the Defense with Gupte's 3500 material for the Rule 15 deposition on August 10, 2009. The Government did not provide the Defense with Gupte's C Visa and H-4 Visa applications, which Gupte used to enter the United States in 1996 and 1999, as part of that 3500 material. A C visa is a crewman's visa and an H-4 visa is a visa to enter the U.S. as the spouse of the holder of an H-1 visa. The Defense immediately notified the Government, upon receipt of the provided 3500 material, that Gupte's C visa and H-4 visa applications were missing. Despite the Government being notified of the missing Giglio and 3500 material, the material was not provided prior to the deposition. Because of the Government's failure to provide the missing Giglio and 3500 material on the date of the deposition, the Defense, on the record, made an application for the missing material and reserved its right to re-open the deposition upon receipt of the missing material.

The Government called the undersigned in connection with the missing Giglio and 3500 material on September 14, 2009, at approximately 4:00 p.m., at which time AUSA Goldsmith notified the undersigned that the requested material had been destroyed by the Department of Homeland Security. Upon advising the undersigned that the Department of Homeland Security had destroyed Gupte's C visa and H-4 visa applications, the Government requested that Defendant Archer consent to Gupte going forward with his removal proceeding. The undersigned advised AUSA Goldsmith that not only was it not the custom of the Department of Homeland Security to destroy files, but that she did not consent to Gupte being permitted to move forward with his removal proceeding. The undersigned advised AUSA Goldsmith that, because the trial was just two months away, there would be no undue hardship if Gupte remained in the United States and testified at trial. The undersigned further advised AUSA Goldsmith that a two month delay in Gupte leaving the country was not a hardship in light of the fact that Gupte testified to being employed and living in an apartment that he owned. The undersigned further advised that as Gupte was a material witness, if he was considering leaving the United States, the Government had the ability to detain him as a material witness. The undersigned, in fact, requested that the Government detain Gupte. Based on the conversation with the Government, it was the intent of the undersigned to draft a motion the following day requesting that Gupte be detained as a material witness. Upon information and belief, co-counsel for Ms. Rafique requested that the government serve Mr. Gupte with a subpoena for trial if they had not already done so.

Four and a half hours after AUSA called the undersigned to notify her that the Department of Homeland Security had destroyed Gupte's C visa and H-4 visa applications, the Government faxed a letter to my office at 8:33:33 P.M. The letter advised the Court that Gupte intended to seek voluntary departure on September 29, 2009, and that the Government would not

be seeking to prevent Gupte's departure from the United States. An hour and thirteen minutes after the Government faxed over its letter to defense counsel, Gupte fled the country without the Government ever serving Gupte with a subpoena to testify at trial.

Case law is clear that a Court's discretion to permit the deposition testimony of a witness in a criminal case must be exercised carefully. *United States v. Mann*, 590 F.2d 361 365 (1st Cir. 1978). In order to establish "exceptional circumstances" to introduce the deposition of missing witness the "movant must show that (1) the prospective witness is unavailable for trial, (2) the witness' testimony is material, and (3) the testimony is necessary to prevent a failure of justice," *United States v. Cohen*, 260 F. 3d 68, 78 (2d Cir. 2001) (quoting *United States v. Singleton*, 460 F.2d 1148, 1154 (2d Cir. 1972); *United States v. Johnpoll*, 739 F.2d 702, 708-9 (2d. Cir. 1984); *United States v. Vilar*, 568 F. Supp. 2d 429; 437; 2008 U.S. Dist. LEXIS 59935 (S.D.N.Y. July 31, 2008). In the instant case it is the defendants' position that the Government should not be rewarded for its failure to take the necessary steps to have its witness available for trial. It is further the position of the defendants that the testimony is not necessary to prevent a failure of justice, but instead, that the introduction of the testimony would deprive the defendants of their Constitutional rights.

## II.     The Government's Witness is not Unavailable as Proscribed under Rule 804 (a)(5) of the Federal Rules of Criminal Procedure

Prior to a witness being deemed unavailable under Rule 804(a)(5) the Government must show that it exercised good faith effort to prevent the witness absence and procure the witness' attendance at trial. *United States v. Olivares*, 1997 U.S. Dist. LEXIS 6845 (S.D.N.Y. May 15, 1997), *United States v. Rothbart*, 653 F.2d 462, 465 (10th Cir. 1981); *United States v. Mann*, 590 F.2d 361, 367 (1st Cir. 1978).

The facts of the instant case are similar to the facts in the case of *United States v. Mann*. The witness in *Mann* was a seventeen year old Australian native that the Government sought to depose prior to trial. Their request was based on the fact that if the witness returned to her native country, it would be impossible to have her available for the trial. Prior to her deposition, the witness was imprisoned in an adult facility and made it known that she wanted to return to her family. Over the objection of the Defense, who stated that the witness' presence at trial was necessary as the case depended solely on the credibility of the witness, the Court granted the Government's motion to depose the witness.

During the deposition, the witness was asked if she would return for trial. When asked this question by defense counsel, the witness replied in the negative; but when asked by the government if she would answer a trial subpoena, she answered in the affirmative. After the deposition, the Government returned the witness' passport and plane tickets. After the witness left the United States, the Government sought the introduction of her videotaped deposition,

arguing that the witness was unavailable. The deposition was introduced at trial and the defendant was convicted.

The U. S. Court of Appeals for the First Circuit vacated the Defendant's conviction and remanded the case to the district court for further proceedings. The Court of Appeals in *Mann* further ruled that the district court abused its discretion by granting the government's motion to depose its witness and that the witness was not "unavailable" within meaning of Rule 804(a). The Court of Appeals stated that the district court "should have been clear from the tenor in the Government's motion that the Government fully expected the witness once her deposition had been taken to leave …for Australia, in all likelihood never to return," and the fact that the witness was a foreign national and desirous of returning home was not an exceptional circumstance in the interest of justice. Furthermore, the Court determined that there was no indication of any personal hardship or necessity requiring the witness' presence elsewhere; the Government could have offered the witness maintenance and retained her passport.

The Southern District of New York in reaching its decision in the *United States v. Olivares,* applied the reasoning employed in both *United States v. Rothbart* and *United States v. Mann* and held that the Government should not be rewarding for placing the mechanisms for the witness to leave the Court's Jurisdiction. The Court in *Olivares* found that the witness became unavailable because "the Government failed to use reasonable means at its disposal to prevent the witness from becoming absent."

In the instant case as in the case of *Mann* it is evident by the tone of the Government's motions and letters that the Government expected their witness Gupte to leave the United States after his deposition. Archer and Rafique are being charged with serious crimes which they have steadfastly denied committing. The case against them is unclear and entirely dependent upon the credibility of the testimony of the Government witnesses. In the instant case the Government witness, Gupte, like the witness in *Mann,* showed no indication of hardship or necessity requiring his return to his native country. Gupte was employed, he had a place to live which he owned, he was not being forced to immediately depart the United States even if his immigration proceedings went forward, and, in fact, could have been paroled into the United States to be available for trial.

The only hardship that Gupte suffered was a self inflicted hardship of being away from his wife and daughter. Gupte testified that his wife and daughter left to India a year before. According to Gupte the reason why his wife and daughter left to was because he did not want his daughter to miss time from school, as school started on a different schedule in India than in the United States. Gupte then admitted during the deposition that since his daughter is a citizen of the United States, she could and has returned to the United States since her initial departure for at least one visit. It was therefore not an undue hardship for Gupte to have stayed in the United States for two additional months so that he could have testified at the trial. Other than missing his wife and daughter, Gupte showed no other hardship with staying in the United States as he admitted to owning to two Co-Op apartments in New York and being employed.

The Government admitted in their letter to the Court dated September 14, 2009, that, over the Defense' objection, it was not going to prevent Gupte from leaving the United States before trial. The Government's failure to take reasonable steps to prevent Gupte's absence and procure his attendance at trial cleared the way for this crucial witness to leave the Court's jurisdiction. F. R. Crim. P. 15(e) does not presume that a deposition is admissible solely because it was taken, the Government must still take all reasonable steps to bring to trial a witness whose testimony the party chooses to present.

The Government failed in this case just as the government failed in *Mann* to exercise good faith in preventing Gupte from becoming absent and procuring Gupte's attendance at trial. The Government's failure to prevent the witness' absence and take reasonable steps to procure his attendance at trial are evidenced by the following:

a. The Government's failure to extract a promise at the deposition that Gupte would return for trial;
b. The Government's failure to confiscate Gupte's passport.
c. The Government's failure to serve Gupte prior to the August 11, 2009, deposition with a trial subpoena despite the fact that the trial date was set on June 22, 2009;
d. The Government's failure to tell Gupte that he needed to return to testify at trial;
e. The Government's failure to make the necessary arrangements so that Gupte could obtain a visa so as to re-enter the country for purposes of testifying at trial;
f. The Government's failure to make arrangements so as to provide Gupte with expenses so he could return to the United States and then have the ability to obtain room and board while in the United States;
g. The Government's failure to revoke Gupte's immigration bond and detain Gupte as a material witness.

Not only has the Government failed to show that it took reasonable steps to prevent Gupte's absence or attendance at trial, they have failed to show, what, if any efforts it made to secure Gupte's voluntary return to testify. *United States v. Mann* 590 F.2d 361, 367 (1st Cir. 1978.) The Government's reliance upon the case of *United States v. Rivera* 859 F. 2d 1204 (4th Cir. 1988) and in *United States v. Terrazas-Montano* 747 F.2d 467 (8th Cir. 1984) is misplaced and distinguishable from the instant case. In both *Rivera* and *Terrazas-Montano* there was an undue hardship if the witnesses remained in the United States, as in both cases the witnesses had recently entered the United States illegally, had no means of support, and no place of abode. The Government's witness, Gupte, on the other hand, testified at the deposition to having been in the United States since 1999, being employed, and having a place of abode that he purchased.

### III. The Defendant's Sixth Amendment right to effectively confront the witness will be denied if the Government's motion were granted.

Although Defense counsel were able to cross examine Gupte at the deposition, the cross examination was not complete. The Government's failure to turn over to the defense and then destroy Gupte's C visa and H-4 visa application deprived Archer and Rafique of the opportunity to fully cross-examine Gupte and impeach Gupte with regards to those applications as well as his visits to other attorneys. Due to the Government's failure to provide the Defense with Gupte's C visa and H-4 visa applications both Archer and Rafique were deprived of the ability to effectively cross examine Gupte. The missing documents, upon information and belief, contained material that would have been used to impeach Gupte with regards to statements Gupte made in his application for labor certification in the year 2002 and thereafter in statements made to the Rafique in 2005 in connection with the I-687 application which is at issue in this case.

A key issue in this case is credibility. Both Archer and Rafique have steadfastly maintained that they are not guilty of the allegations stated in any of the indictments. Both Mr. Archer and Ms. Rafique have maintained that they never submitted an application to the Department of Homeland Security knowing that the contents of the application were false. F. R. Crim. P. 15 was enacted to prevent a failure of justice, and not as method for the Government to introduce the testimony of a witness whose credibility is suspect so as to deprive a defendant from properly cross examining the witness. When Gupte fled the country on September 14, 2009, he had not yet been notified that his C visa and H-4 visa applications had been destroyed. Gupte was aware that upon the applications being located, his deposition was going to be re-opened. Gupte's flight when the government agent notified him that they wanted to schedule a meeting on September 15, 2009, casts grave doubt on Gupte's truthfulness at the deposition. Furthermore, Gupte lied when he told government agents on September 14, 2009, that he would meet with them the following day. Gupte clearly knew that at the time of the scheduled meeting he would be in India, outside of the Court's jurisdiction, having violated the terms of his immigration bond with the Court still not having granted his request for voluntary departure.

At the time of Gupte's departure the Government had taken no steps to secure Gupte's attendance at trial, much less any reasonable ones. If the Government had at minimum served Gupte with a trial subpoena when the trial date was set, or even at the deposition, and warned Gupte that his assets might be subject to forfeiture in the event he failed to appear at trial and was charged with contempt, it is unlikely Gupte would have fled. Gupte would then be available for live testimony at the trial and the recorded deposition would not be needed. The Government's failure to act in subpoenaing Gupte to appear at trial when the trial date was set or at a reasonable time afterward, set the mechanism for Gupte's unavailability. The Government should not be rewarded by being allowed to introduce Gupte's recorded deposition, especially when the deposition denied the Defense a full and fair opportunity to cross-examine the witness.

The release of Gupte was a severe disadvantage to the defendants who are protected by the Sixth Amendment and has triggered a "failure of justice" under section 3144. The videotaped deposition is simply not going to cover all of the significant aspects of the case as it develops during the trial. In the instant matter, Gupte's credibility or lack thereof is crucial to the Defense.

The fact that the Government failed to take any reasonable steps to ensure Gupte's availability at trial has resulted in the Defense not being able to fully confront Gupte. "No court has ever held that a videotaped deposition is the equivalent of live testimony." *United States v. Huang* 827 F. Supp. 945; 1993 U.S.Dist. LEXIS 698 (S.D.N.Y. January 22, 1993.)

The Government's failure to take any reasonable steps to secure Gupte's attendance at trial has severely prejudiced the defendants. "[D]eposition testimony is only admissible if the Government has exhausted reasonable efforts to assure that the witness will attend trial…" something the Government has failed to do.

## VI. Conclusion

Wherefore for all the reasons set forth herein the Defendants respectfully request that the Government's motion to admit Gupte's videotaped deposition be denied.

Very truly yours,

KARINA E. ALOMAR