**EXHIBIT D**

Page 1

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

-------------------------------------

UNITED STATES OF AMERICA,

        Plaintiff,

  -vs-

THOMAS ARCHER and RUKHSANA RAFIQUE,

also known as "Rukhsana Rukhsana,"

        Defendants.

-------------------------------------

      DEPOSITION OF RAHUL GUPTE, the witness herein, taken at the offices of the United States Attorney, Eastern District of New York, 271 Cadman Plaza East, Brooklyn, New York, on August 11, 2009, at 10:00 a.m., before Robert Bloom, a Shorthand Reporter and notary public, within and for the State of New York.

Page 6

```
 2   regard to this witness' H4 file nor any
 3   documents with regard to this witness' C
 4   file, C Visa.
 5       Thereafter, in conversations with
 6   AUSA Goldsmith, it was brought to my
 7   attention that there were some notes from
 8   ICE agents that were removed on the
 9   grounds that the ICE agents say they are
10   attorney work product.
11       It is the defense's position that
12   these items are valid 3500 material, that
13   they should be produced because they could
14   contain exculpatory information or they
15   could contain statements made by this
16   individual, and it's something that should
17   be produced to the defense.
18       As such, the defendants will be
19   reserving their right to have a deposition
20   of this witness at a later date.
21       MS. WHALEN: I join in that
22   application. Especially with respect to
23   any other immigration applications that
24   are outstanding in this matter.
25       Credibility is the key here, the
```

Page 7

```
 2   defense has asserted that credibility is
 3   the key from the beginning of this case.
 4   And the real issue is who is supplying the
 5   information on these documents that's
 6   supposed to be false. And if this
 7   individual has provided other information
 8   on other documents that we have reason to
 9   believe is false, by not giving us those
10   documents, you've effectively precluded us
11   on fully cross-examining him with respect
12   to credibility.
13       With respect to the issues of work
14   product, again, if there are any
15   statements by the witness that have been
16   redacted from those documents, then
17   clearly I think they are 3500 material and
18   should be provided to us. And, again, I
19   join in the reservation of the right to
20   recall the witness or object to the
21   testimony being presented at trial given
22   this potential limitation of examination.
23       MR. GOLDSMITH: We turned over the
24   3500 material, the witness' A file, the
25   witness' T file, both of those files.
```

Page 8

```
 2   Redactions were made from those files to
 3   remove attorney work product by ICE
 4   attorneys, not any ICE agents. And
 5   certain other internal ICE documents in
 6   the nature of interoffice memo cover
 7   sheets, and printouts from ICE databases.
 8       It is correct that there's no H -- no
 9   references to any H4 application or visa
10   or any C Visa in the witness' A file or T
11   file.
12       Last night, Ms. Alomar suggested that
13   we check the witness' wife's A file. I
14   have made a request for that. I'm told
15   that the witness' wife does not have an A
16   file, that she has two receipt files,
17   which is not a term I had heard before.
18   They are in Vermont. The request has
19   been made to get them.
20       If there is anything in those files
21   that is 3500 material for this witness or
22   Giglio or Brady, we will turn it over.
23       The items that were withheld from the
24   witness' A file and T file I believe do
25   not contain any 3500 material, certainly
```

Page 9

```
 2   do not contain any statements by the
 3   witness, and do not contain any Brady or
 4   Giglio.
 5       I should also mention finally that we
 6   also turned over the witness' I140
 7   application and a letter that was attached
 8   to that. That application was not
 9   contained in the A file or the T file, but
10   it was apparent that it must have existed
11   somewhere, so we managed to find it and
12   turned it.
13       MS. ALOMAR: I'm sorry, I just have a
14   concern after the statements you have made
15   because it leaves me to believe the
16   possibility exists that this witness may
17   have two different A numbers or possibly
18   even three A numbers, because from my
19   understanding of the immigration process
20   is that if this witness came on an H4
21   visa, then his wife must have received --
22   if his statements are true that he came on
23   an H4 visa based on his wife's being
24   granted an H1 visa -- then there has to be
25   a file for his wife, not just a receipt
```

Page 10

```
 2   file, which would lead me to believe that
 3   his wife has an application pending and
 4   the application has yet to be approved.
 5        So based on these statements, it
 6   leads me to believe that there are
 7   documents missing for these witnesses.
 8        I would ask that maybe the best way
 9   to determine if there are any other files
10   is to maybe do a match through
11   fingerprints.  Actually, that wouldn't
12   even apply because like the labor cert, if
13   he didn't get his fingerprints, yet if it
14   was only the paperwork being done, there
15   is no way of cross referencing the files.
16        MR. GOLDSMITH:  I'm told that the
17   witness has only one A number, I
18   understand sometimes people have more than
19   one.
20        I should clarify perhaps the T file
21   that I referenced, the T as I understand
22   it is for "temporary."  Under some
23   circumstances apparently ICE, if they need
24   to add something to someone's file but
25   can't get a hold of the A file in a timely
```

Page 11

```
 2   fashion they create a T file and they're
 3   later combined.  In this instance, they
 4   hadn't been combined yet.  We figured out
 5   the T file was still out there, so we got
 6   it.
 7        Like I said, when I get the wife's
 8   file, whatever exists for the wife, I'm
 9   told they're receipt files as opposed to A
10   files, I don't know if that is a
11   particularly meaningful distinction, but
12   when we get those files, we'll look at
13   them and if there is anything that should
14   be turned over with respect to Mr. Gupte,
15   we will do that.
16        MS. WHALEN:  Do you know, did they
17   give you an idea about when they would
18   have the files down here?
19        MR. GOLDSMITH:  They did not.
20        MS. WHALEN:  I would just then
21   request that you request that Mr. Gupte
22   remain until we had an opportunity to
23   receive and review those files in case we
24   need to requestion him, and my
25   understanding is that the benefit of
```

Page 12

```
 2   voluntary departure is being withheld,
 3   he's not going to be granted -- let me
 4   rephrase -- the letters that we have say
 5   that his getting voluntary departure is
 6   consistent with his cooperation with the
 7   government.
 8        So to whatever extent you can make
 9   sure that he remains in the country until
10   we have had an opportunity to review those
11   files, I would appreciate it.
12        MR. GOLDSMITH:  Okay.  Just to
13   clarify, his removal proceedings are
14   effectively on hold during his cooperation
15   with the government.  It's up to the
16   immigration judge whether he gets
17   voluntary departure or is removed
18   otherwise.
19        But, yes, I will ask him to remain
20   here until I can get those files and
21   review them and if something needs to be
22   turned over and we need to bring him back
23   until we resolve that issue.
24        MS. WHALEN:  Great.
25        MS. ALOMAR:  I would join in that
```

Page 13

```
 2   application for the defendant, Thomas
 3   Archer.  But I want to just clarify
 4   something.
 5        When you say that this witness'
 6   immigration removal proceeding is being
 7   put on hold, does that mean that the
 8   September date that he has, the September
 9   11th court appearance is being adjourned?
10        MR. GOLDSMITH:  As far as I know,
11   September 11th court appearance is still
12   set to happen.
13        At that point, it could be adjourned
14   further, but my understanding is he's due
15   in immigration court on September 11th.
16        MS. WHALEN:  I guess the issue would
17   be, if the government -- we are just
18   asking that if the government is providing
19   any letters in support of whatever
20   immigration benefit he's seeking, then we
21   would just ask that the government not
22   provide that letter until we have had an
23   opportunity to resolve this issue about
24   the deposition.
25        MR. GOLDSMITH:  The government is not
```