# EXHIBIT E

1

```
                  UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - -X

  UNITED STATES OF AMERICA,     :    08-CR-288 (SJ)

          -against-             :    United States Courthouse
                                :    Brooklyn, New York
                                :
                                :    June 22, 2009
  THOMAS ARCHER and             :    9:30 a.m.
  RUKHSANA RAFIQUE,             :

          Defendant.            :
- - - - - - - - - - - - - -X

    TRANSCRIPT OF CRIMINAL CAUSE FOR STATUS CONFERENCE
       BEFORE THE HONORABLE STERLING JOHNSON, JR.
          UNITED STATES SENIOR DISTRICT JUDGE

                    A P P E A R A N C E S:

For the Government:   BENTON J. CAMPBELL, ESQ.
                           United States Attorney
                           Eastern District of New York
                           271 Cadman Plaza East
                           Brooklyn, New York 11201
                      BY:  ANDREW E. GOLDSMITH, ESQ.
                           Assistant United States Attorney

For the Defendant:    ALOMAR & ASSOCIATES, P.C.
Thomas Archer              60-89 Myrtle Avenue
                           2nd Floor
                           Ridgewood, New York 11365
                      BY:  KARINA E. ALOMAR, ESQ.

Interpreter:          Alyas Bhatti

Court Reporter:       Marie Foley, RPR, CRR
                      Official Court Reporter
                           Telephone: (718) 613-2596
                           Facsimile: (718) 613-2648
                           E-mail: Marie_Foley@nyed.uscourts.gov

Proceedings recorded by computerized stenography.  Transcript
produced by Computer-aided Transcription.
```

1       (Open court.)

2       (Judge Johnson takes the bench.)

3       (Defendants present.)

4       COURTROOM DEPUTY:  USA versus Thomas Archer and

5  Rukhsana Rafique.

6       THE COURT:  Note your appearances.

7       MR. GOLDSMITH:  Andrew Goldsmith for the Government.

8  Good morning, your Honor.

9       THE COURT:  Good morning.

10      MS. ALOMAR:  Good morning, your Honor.  Karina

11 Alomar on behalf of Mr. Archer.

12      MS. WHALEN:  Good morning, your Honor.  The Federal

13 Defender of New York by Mildred Whalen on behalf of Rukhsana

14 Rafique.

15      Your Honor, we have the interpreter here, but we

16 just need him on standby.  Ms. Rafique speaks a lot of

17 English.

18      THE COURT:  All right.

19      I've decided a lot of the motions.

20      Do we have that to give out?

21      COURTROOM DEPUTY:  (Handing.)

22      THE COURT:  Any other discovery issues outstanding?

23      MR. GOLDSMITH:  No, your Honor.

24      THE COURT:  So the only thing we have to do is set a

25 trial date.

1    MS. WHALEN:  Well, your Honor, I think that there
2    is, I'm just looking at your decision which deals with the
3    15(g) motion, but we had the prior motions for the complete
4    files of the individuals that were used for the charts that
5    the Government wanted to present, and we had the issue of
6    whether the Government would have to disclose the summary
7    charts to us in advance of the trial because there are some
8    real issues as to the nature of the information in this case.
9         And if I can just briefly present what I believe is
10   the defense position.  This case deals with applications that
11   were made under what I think originated back in the '80s with
12   President Reagan's attempt to legalize a large number of
13   illegal immigrants in the United States, and the class was
14   opened, then it was shut.  There were lawsuits.  The class was
15   reopened, then it was shut.  In two thousand, I guess, four or
16   2005, the class was reopened.  So a number of individuals came
17   to this law firm and filed applications under this program,
18   and the Government is alleging that the defendants
19   deliberately filed applications containing information, and I
20   believe this is the Government's theory, that they had made
21   up --
22        THE COURT:  They being the defendants?
23        MS. WHALEN:  Meaning the defendants to show
24   eligibility for this program.
25        The Government has, at this point, I think five

Proceedings                                                          4

1  individuals that they want to go forward with who would
2  presumably come in and testify that they didn't provide the
3  information on the applications, that they simply signed the
4  applications and didn't know what they said.
5           The Government then wants to present all of the
6  applications that were filed by the law firm during this time
7  period, this reopened class period, which I think was 2005 to
8  2006 or 2007, in the form of summary charts to show a pattern
9  of information, and I guess their argument, they're not
10 claiming that the information --
11          THE COURT:  They want to show the summary charts
12 without showing the, what is it, I-687s?
13          MS. WHALEN:  Right, they want to just do a summary
14 chart of the I-687s.
15          THE COURT:  Without showing the I-687s themselves.
16          MS. WHALEN:  Right, and then show individual
17 instances of a pattern that they will not have their witness
18 testify to as being fraudulent, but they will then later argue
19 to the jury as being fraudulent.
20          Was asked for permission, and the Government granted
21 us permission, to look at the entire immigration files of the
22 individuals who had filed I-687s with Mr. Archer's office, and
23 when we went through that in my letter of - if I can find my
24 most recent letter - but in my letter of March 16th, I
25 provided a list of all of the individuals, Ms. Alomar and I

Marie Foley, RPR, CRR
Official Court Reporter

1  both reviewed the files, and in my review, I found 47 of the
2  individuals who had filed prior applications with the
3  immigration before filing this I-687 with Mr. Archer's office
4  and saw indications of fraud.  Some was outright fraud.  Some
5  was fraud in prior applications in this I-687 program.  Some
6  was fraud in the SAW, Special Agricultural Worker program.
7  Some of it might not have been demonstrated fraud, but it was
8  an application that indicated fraud, like a spousal
9  application where the application's filed a day after the
10 marriage, individuals who had multiple spousal applications
11 filed within two weeks of the marriage.  And I think that
12 that's Brady material that needs to be provided to the defense
13 because it undercuts the Government's claim that the
14 information in these files is provided by these clients.  And
15 I think we need to be able to see the Government's, if the
16 Court's not prepared to rule yet and I don't know that the
17 Court would be able to rule yet because I think we need to see
18 what the Government's charts are going to show.  The defense
19 needs to be able to take out the applications of the
20 fraudulent or the people that we think have already
21 demonstrated fraud.
22           THE COURT:  As I understand you - I said it, but I'm
23 not sure that I really understand it - the Government, you
24 say, wants to show a summary of these applications without
25 showing the applications themselves?

Proceedings                                                      6

1           MS. WHALEN:  That's my understanding.
2           MS. ALOMAR:  That is correct.
3           THE COURT:  Let me speak to the Government.
4           MR. GOLDSMITH:  Your Honor, if I could address a
5    couple of things.
6           First, as to the Government's overall theory here.
7    It is not necessarily that in every case the defendants
8    themselves made up the information that was put into the
9    forms.  The charge is that the defendants knowingly prepared
10   these forms with false information in them.  In some
11   instances, the applicants may have made up the information,
12   and so in some instances the defendants made up the
13   information, but the point is that the defendants knew that
14   the applications were false.
15          As to the applicants of all these other people, the
16   Government is happy to put into evidence the applications of
17   all of these people and, in fact, the files of all these
18   people.  The Government does intend to put together some sort
19   of summary chart so that --
20          THE COURT:  So you're going to put the applications
21   themselves in, and then you want to have a summary of those
22   applications?
23          MR. GOLDSMITH:  Yes, your Honor.
24          THE COURT:  As opposed to just putting in the
25   summary.

1           MR. GOLDSMITH:  Yes.

2           And as to the defense's arguments about well, some

3  of these people have other problems in their history that

4  suggests they're fraudsters themselves, those are jury

5  arguments that the defense is certainly entitled to make.

6           MS. ALOMAR:  Actually, your Honor, some of those

7  files had notations by the immigration officer well prior to

8  these individuals coming to see my client where in their

9  spousal petitions, the immigration officer wrote "complete

10 fraud."  So I think that there is already a finding of fraud

11 in a lot of these prior applications by the immigration

12 officer.

13          THE COURT:  But the Government said they're going to

14 put these applications themselves into evidence.

15          MS. ALOMAR:  But it's not just the application that

16 we need.  It's the actual file of the individual that we have

17 not --

18          THE COURT:  Well, the Government just said they'll

19 put the file in.

20          MS. WHALEN:  No, my understanding is that they're

21 only going to put the I-687 file.

22          We need the entire file of any prior applications of

23 these individuals that show a demonstrated pattern of fraud.

24          THE COURT:  I just heard the Government said they're

25 going to put the file in.

1     MR. GOLDSMITH:  Initially we had intended to just
2  put the 687 applications in.  In light of the argument that
3  the defense has made, we'll put in the files.
4     MS. WHALEN:  But, your Honor, I also think that we
5  then need to see what arguments the charts are going to show
6  because the Government's claim, as I understand it now, is
7  that the defendants knew the information in the applications
8  was false, even if they didn't provide the false information
9  themselves.
10     My understanding is that the charts are going to
11  somehow demonstrate this knowledge, or the multiple
12  applications are going to somehow demonstrate this knowledge.
13  I've reviewed those applications, and I don't see any patterns
14  emerging.
15     THE COURT:  What I hear you saying is that you want
16  to look at the Government's file, the evidence that they're
17  going to present at trial.
18     MS. WHALEN:  In terms of the charts, because the
19  Government is saying that they're going to present these
20  charts at trial.  We aren't going to have an opportunity to
21  review those charts, and we're not going to have an
22  opportunity to show the Court.
23     THE COURT:  But the Government said they're going to
24  put the entire file in.  You're going to have an opportunity
25  to review that file after it's in.

1   MS. WHALEN: Yes, but that might not affect the
2   issue of the charts. If the Government's allowed to put in
3   charts and we don't know what those charts are going to show
4   in terms of their claim that there's a pattern of activity
5   that demonstrates that the defendants knew there was fraud in
6   these applications, we're not going to have the opportunity to
7   generate other charts to show that those patterns don't exist.
8       We aren't really even going to have an opportunity,
9   since the Government says they're only going to give us this
10  information one day before trial, to present a meaningful
11  defense, and this is our argument is that we don't even know
12  if the charts would be admissible. The Court acts as a
13  gatekeeper. The Court determines whether they're admissible
14  as summary evidence at the trial, and we're not going to be
15  able to effectively argue whether they are or not if we don't
16  see them in advance to know what claims of pattern. I mean,
17  the Government's backed away from saying that the charts
18  themselves are going to demonstrate fraud, but if we don't
19  even know what pattern they're going to demonstrate, we can't
20  effectively defend against that.
21      THE COURT: Let's hear the Government.
22      MR. GOLDSMITH: Your Honor, the defense counsel have
23  both reviewed the files. As Ms. Whalen said, they're familiar
24  with what's in the files.
25      We would turn over, we would agree to turn over a

1  draft version of the charts at some reasonable time in advance
2  of trial.  Up until this date, there hasn't been a trial date
3  set, so turning them over now or next week doesn't seem
4  reasonable, but some reasonable period of time before trial we
5  would agree to that.
6          MS. ALOMAR:  Your Honor, I would respectfully submit
7  that that should also be submitted at a reasonable time prior
8  to the deposition that your Honor has granted the Government
9  to take.  In order for us to effectively prepare for that
10 deposition, we would also need to see the charts in advance.
11         MR. GOLDSMITH:  I don't see why that would be, your
12 Honor.  The deposition is of one witness.  The defense has
13 already had the opportunity to review all the files.  The
14 Government will turn over 3500 for that witness in advance of
15 the deposition.  I don't know what the defense needs as to
16 other people who filed applications through the defendants in
17 order to conduct that deposition.
18         THE COURT:  I guess you'll have to get a date for
19 the deposition of this particular witness.
20         Is that correct?
21         MR. GOLDSMITH:  Yes, your Honor.  I'm sure we can
22 work that out without taking up the Court's time.
23         MS. ALOMAR:  Your Honor, in addition we have filed a
24 motion to preclude the testimony of immigration officer
25 Shatzkamer.  We still have not received a decision as to that

1  motion.

2          It is the defense's position that that officer, his
3  testimony should not be permitted.  The Government is trying
4  to admit his testimony as an expert witness.  Yet they're
5  saying that he's not an expert in the field.  He cannot
6  provide -- in order for him to come in and testify as to a
7  pattern, the rules that were promulgated in Daubert have to
8  also have to apply for his expert testimony as to patterns,
9  and the Government has not given us any kind of indication how
10 they can do that.

11         In a prior proceeding with different individuals,
12 the same officer testified, and within five minutes of his
13 testimony, he kept saying that he was a immigration officer in
14 the fraud unit, and he kept saying the word "fraud" over and
15 over and over again, which in our opinion if that were to
16 occur in this case, it would unduly prejudice our client
17 because it would be implanting the idea into the jury's mind
18 that if this immigration officer felt that there was fraud,
19 that there had to be fraud.  And the Government is not able to
20 say -- the officer cannot say as to -- cannot give any kind of
21 basis as to how he is determining fraud other than his own
22 subjective --

23         THE COURT:  He said that he's in the fraud unit and
24 he's in the fraud unit; is that correct?

25         MS. ALOMAR:  Right.

1    THE COURT:  What do you say to that argument?
2    MR. GOLDSMITH:  Your Honor, I'm just looking at my
3    letter of January 9th.  The areas that Officer will testify
4    about are the requirements for this program that the
5    defendants prepared applications in.  He will be the witness
6    who will put in all of these files that we have been talking
7    about, and the charts as well.  He's the person who reviewed
8    all the files.  He will not testify as to any conclusion of
9    his own that the applications were fraudulent.  He himself
10   will be, in a sense, sort of a summary chart.  He will
11   describe what's in these files and how the forms work.
12       His testimony, he did testify in a case in the
13   Southern District, as is described in the papers.  There are
14   few things that he testified to in that case that we will not
15   put him forward to testify about, arguably expert testimony
16   that we will not go into.  His testimony will really be very
17   strictly factual about how this program worked, how these
18   forms work.  He's the person who will review the files and put
19   together the charts, so he's the person who will put them into
20   evidence, but he's not going to stand up there and say 'in my
21   expert opinion, these people committed fraud.'  He will not do
22   that.
23   MS. ALOMAR:  Well, your Honor, it's our
24   understanding that this individual did not review all of these
25   files.  It's our understanding --

1        THE COURT:  The Government said he did, and he's
2  going to testify to what he reviewed.
3        MS. ALOMAR:  It's in my understanding from the prior
4  papers that this individual has testified that he works in the
5  fraud unit, that he got indicators of fraud from --
6        THE COURT:  I don't know anything about any prior
7  papers.  I'm going by what the Government said he's going to
8  testify to.
9        MS. ALOMAR:  In the motion that we wrote that the
10 Government stated that this individual worked at the fraud
11 unit, that he got papers from various immigration offices.
12       THE COURT:  When this person testifies, if you have
13 an objection to his testimony, you object.  I'll rule on it.
14       Okay?
15       MS. WHALEN:  Okay.
16       Can we just, if we could, get a commitment from the
17 Government when they will give us the entire immigration
18 files?  And if the Court's amenable, perhaps we can start
19 talking trial dates because I know you go away.
20       You're going to Miami?
21       THE COURT:  Well, that's in August, in the summer.
22 I've got a full trial schedule in the fall.
23       How long would this trial take?
24       MR. GOLDSMITH:  Less than a week, your Honor.
25       MS. WHALEN:  I would think, I think there's going to

1  be a defense case.  So in this case, I would say a week to a
2  week-and-a-half.
3              THE COURT:  Okay.  We'll set two weeks.
4          When is a good time, Ana?
5              COURTROOM DEPUTY:  November 16th.
6              THE COURT:  November 16th.
7              MS. WHALEN:  Terrific.
8              MS. ALOMAR:  That goes into the Thanksgiving week.
9  I'm going away that week of Thanksgiving.
10             THE COURT:  November 16th.
11             MS. ALOMAR:  Your Honor, I have flight tickets
12 already for the week, I'm leaving the 21st.
13             THE COURT:  What else do we have, Ana?
14             COURTROOM DEPUTY:  November 9th.
15             MS. ALOMAR:  That's fine.
16             MS. WHALEN:  That would be great.  Thank you.
17             THE COURT:  And you will work out the scheduling.
18             MR. GOLDSMITH:  For the deposition, yes.
19             MS. WHALEN:  Yes.  And then just if we could have,
20 the files are fairly voluminous.  So if we could have them, I
21 would guess, by the end of September.
22             THE COURT:  Work that out between yourselves.
23             MS. WHALEN:  Okay.  We'll come to you if there's a
24 problem.
25             THE COURT:  Time will be excluded.

1    Motions are still pending anyway, right?

2    MR. GOLDSMITH:  Yes.

3    MS. WHALEN:  Yes.

4    MR. GOLDSMITH:  Thank you, your Honor.

5    MS. WHALEN:  Thank you.

6    (Time noted:   10:00 a.m.)