UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------X

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ JAN 6 - 2010 ★
BROOKLYN OFFICE

UNITED STATES OF AMERICA,

                 08 CR 288 (SJ)

  v.

                <u>MEMORANDUM</u>
                <u>AND ORDER</u>

THOMAS ARCHER and
RUKHSANA RAFIQUE,

  Defendants.

-------------------------------------------------X

APPEARANCES

UNITED STATES ATTORNEY
Benton J. Campbell
United States Attorney
271 Cadman Plaza East
Brooklyn, NY 11201
By: Andrew Goldsmith
   Soumya Dayananda

ALOMAR & ASSOCIATES, P.C.
60-89 Myrtle Avenue
Ridgewood, NY 11385
By: Karina Alomar
Attorney for Thomas Archer

FEDERAL DEFENDERS OF NEW YORK, INC.
One Pierrepont Plaza, 16th Floor
Brooklyn, NY 11201
By: Mildred Whalen
Attorney for Rukhsana Rafique

1

JOHNSON, Senior District Judge:

The above-referenced action was set for jury selection and trial, to commence on November 16, 2009. On November 9, 2009, defendant Rukhsana Rafique ("Rafique") filed a motion to hold the Department of Homeland Security ("DHS" or the "Department") in contempt, based on the government's failure to turn over certain discovery despite numerous defense requests for same. The Court denied the motion but, on November 10, 2009, ordered the discovery produced immediately. Because the discovery was not produced until the afternoon of November 13 (the Friday before a Monday trial), the Court determined that a hearing should be held in order to determine the cause for the government's delay, and the trial was adjourned sin die. The hearing took place on November 19 and 23, 2009, and included the testimony of several DHS employees, in addition to argument on the government's outstanding motion to introduce deposition testimony at trial. Based on the parties' submissions, and for the reasons stated below, the Court is satisfied that all available discovery has been produced to the defense team and that no further remedy is warranted. Therefore, Defendant's motion for a limiting instruction is DENIED, WITH LEAVE TO RENEW. Additionally, the government's motion to admit the testimony of Rahul Gupte ("Gupte") is GRANTED. This memorandum briefly summarizes the issues presented.

Defendant Thomas Archer ("Archer"), an attorney, and his assistant, Rafique (collectively "Defendants") are charged in a four-count indictment with visa fraud and conspiracy to commit visa fraud. Specifically, the indictment alleges that Defendants filed four visa applications (on behalf of clients) containing false statements. As part of discovery, the defense team requested the opportunity to review visa applications prepared by Archer's office and received same. Upon review, the defense team observed that some application denials made reference to prior applications by Archer's clients. By no later than June 2009, the defense team had reviewed the complete immigration file of those individuals believed to have committed immigration fraud in applications filed independently of Defendants and requested copies of some of those files from the government (the "Files"). At the October 20, 2009 pre-trial conference, the government indicated that the Files were still being prepared. On November 7, 2009, the government informed the defense team that DHS would not provide them with copies of the Files. Thereafter, on November 9, counsel for Rafique filed a motion to adjourn trial and hold a hearing to determine whether DHS ought to be held in contempt of court.

The Court denied both motions on November 10, 2009, but simultaneously ordered DHS to immediately produce the Files to the defense team. (Docket No. 100.) That same day, Jason Raphael ("Raphael"), Associate Regional Counsel at Citizenship and Immigration Services (a branch of DHS) sent a letter to the Court

3

in which he anticipated that the Files would be copied sometime on Thursday, November 12 and certified that day or "early" the following morning, November 13. (Docket No. 127.) At 11:30 on the morning of the November 13 (the last business day prior to jury selection and trial), counsel for Rafique contacted Raphael to inquire as to the status of the Files. She was then informed by Raphael that the Files were ready but that they would not be delivered to the defense team. (Docket No. 110.) Additional wrangling with the government over the delivery of the Files resulted in them not being received by the defense team until 3:00 that afternoon. Consequently, counsel for Rafique wrote to the Court seeking to include in the jury charge an instruction that DHS failed to comply with a Court order, and that the jury may infer therefrom that DHS sought to deprive Defendants of a fair trial. (Docket No. 110.)

In light of the foregoing, the Court adjourned trial sin die and scheduled a hearing to determine the cause for delay in producing the Files, as well as on the outstanding issue of whether to admit deposition testimony of Gupte. At the hearing, the Court took testimony of several DHS employees, which indicated communication failures among and between two of the Department's agencies, Citizenship and Immigration Services ("CIS") and Immigration and Customs Enforcement ("ICE"), the former being the legal custodian of the Files and the latter being the enforcement branch of DHS. In large part, the testimony indicated that delay in the production of the Files arose from concern that their production in

4

P-049

full may have violated privacy laws; miscommunication surrounding whether Defendants required certified copies of the Files; and the fact that the Court's November 10 order was issued the afternoon prior to a mid-week holiday. The Court is convinced that bad faith played no part in these delays, considering especially the testimony of Eric Silverman ("Silverman"), the agent for ICE assigned to Archer's case. Silverman testified that a total of eight ICE agents volunteered to copy the Files on the holiday and without overtime pay, and also came to work the day after the holiday at 6:00am to complete the copying.

However, the testimony of Raphael, Associate Regional Counsel to CIS (the division of DHS responsible for certifying the Files prior to their production), bears mention. Raphael testified that he was aware of the Court's order directing DHS to immediately produce the Files to the defense team and that, while he was aware for "at least a week" that Silverman had possession of the Files, he could not say whether he called Silverman between the issuance of the order on November 10 and the afternoon of November 12. (Transcript of 11/19/09 Proceedings ("Tr.") at 138-140.) Raphael also failed to recall what actions he took, if any, upon learning, at 4:30pm on November 12, that the defense team did not require the copied Files to be certified by CIS. Raphael testified that "[he did] not remember exactly what [he] did in response to this e-mail, but [he] know[s] [he] tried to make sure that the copying was being done." (Tr. at 137:4-7.) However, Silverman testified that the copying was already completed by that time. (Transcript of 11/23/09 Proceedings

5

P-049

at 21-22.) Had Raphael and Silverman communicated after learning that the non-certified copies could be produced, the Files could likely have been delivered on Thursday.

However, the Files were not delivered until Friday afternoon, not only because of the lack of communication between ICE and CIS, but also because, despite the Court's order directing immediately production, Raphael made no effort to contact the defense team. When contacted by counsel for Rafique at 11:30am on Friday, Raphael then told her both that the Files were ready and that it was the defense team's responsibility to retrieve them from CIS. Raphael did not arrange for the files to be sent to defense counsel "because [he] never agreed to." (Tr. 140.) When asked by the Court why an agreement was necessary in the face of an order requiring their production, he testified that it "was never clear" to him. (Tr. 141.) The Court found Raphael's responses to both the government's and the defense team's questions evasive and his demeanor abrasive. He appeared to be unaware that CIS is a part of the government and thus subject to orders directing the government's production of documents in his custody.

While Raphael's actions (or nonactions, as they were) are troubling, the Court is satisfied that any potential prejudice to Defendants has been subsequently cured by the U.S. Attorney's Office's delivery of the files to the defense team on November 13 and the adjournment of the November 16 trial. As far as the Court is

6

aware, the defense team has received all outstanding discovery capable of production and has been given adequate time for review and trial preparation. Accordingly, Defendants' motion for a limiting instruction is denied with leave to renew.

*Gupte Deposition*

On April 27, 2009, the government moved to take Gupte's videotaped deposition based on the fact that Gupte was, at the time, in the United States with an expired visa and in removal proceedings. Additionally, the government argued that Gupte's I-687 application is the basis for Count Three of the indictment, making his testimony material to its case. On June 22, 2009, the Court granted the government's motion to take a videotaped deposition of Gupte but declined to make a finding as to the admissibility of same. (See Memorandum and Order of June 22, 2009 at 4 ("The parties are free to pursue with the witness his availability for trial in the course of the deposition and raise the issue at trial.").)

The government took Gupte's deposition on August 11, 2009, but no attempt to serve him with a subpoena was undertaken until September 14, 2009. On that date, Silverman contacted Gupte and arranged to meet him the following day. Though Gupta indicated his intent to meet with Silverman, he boarded an Air India flight that night from John F. Kennedy Airport and departed the United

7

P-049

States. Although Silverman had earlier entered Gupte's pedigree information into the Treasury Enforcement Computer System ("TECS") – a system intended to, inter alia, alert him by e-mail of Gupte's attempt to enter or exit the United States – Silverman did not receive the email in time to prevent Gupte's departure. (Tr. 15-40.)

Defendants oppose the admission of Gupte's deposition on the grounds that he is not "unavailable" under the Federal Rule of Evidence 804(a)(5). Defendants do not dispute that Gupte is beyond the subpoena power of this Court, nor do they argue that the government procured his departure. Instead, they argue that the government failed to exercise good faith in procuring Gupte's testimony. This contention need not detain us long.

An Arizona Immigration Court released Gupte on bond following his October 2008 arrest and there has been no evidence indicating that Gupte failed to satisfy any conditions of that bond. Upon learning of Gupte's arrest, Silverman entered Gupte's pedigree information into TECS, fully intending to keep abreast of his movements in or out of the country. Notwithstanding Gupte's desire to return to India, Gupte expressed willingness not only to testify at trial, but also to meet with Silverman for the purpose of being served with the subpoena on September 15, 2009. While the TECS system, in this instance, failed to provide notification of Gupte's planned departure in time to frustrate those plans, there has been no

8

evidence presented to suggest that such failure was intentional or otherwise indicative of bad faith, rendering inapposite the cases cited by Defendants. United States v. Oliveras, 1997 U.S. Dist. LEXIS 6845 (S.D.N.Y. May 15, 1997) (government failed to use reasonable means to prevent witness's absence when it consented to continuing bail package in the face of statute requiring detention); see also United States v. Rothbart, 653 F.2d 462 (10th Cir. 1981) (government cleared existing obstacles to witness's departure by deposing him after service of a subpoena); United States v. Mann, 590 F.2d 361 (1st Cir. 1981) (witness was not unavailable where government returned her passport and plane tickets and she departed for Australia prior to trial). Moreover, Defendants had the opportunity to (and did) cross-examine Gupte at his deposition. Their argument that the Confrontation Clause would be violated by the admission of Gupte's deposition is thus untenable. United States v. Johnpoll, 739 F.2d 702 (2d Cir. 1984) ("The Confrontation Clause does not preclude admission of prior testimony of an unavailable witness . . . provided his unavailability is shown and the defendant had an opportunity to cross examine him."). Accordingly, the government's motion to admit Gupte's testimony is granted.

SO ORDERED.

Dated: December 30, 2009
Brooklyn, NY

/s/(SJ)

Sterling Johnson, Jr.
Senior United States District Judge

P-049