**EXHIBIT A**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------------x
GRIGORI ZAICHIK, on behalf of himself
and all persons similarly situated

                Plaintiffs,                Index No.

    -against-

HK INVESTIGATIONS CO., DAVID J.        **VERIFIED**
GOLD, DAVID J. GOLD, PC, THOMAS W.    **CLASS ACTION**
ARCHER, and STEPHANIE BOWMAN d/b/a  **COMPLAINT**
SUPREME JUDGMENT RECOVERY

              Defendants.
------------------------------------------------------------------x

Plaintiff, by his attorney Toby Golick, alleges as follows:

## PARTIES

1.    Named Plaintiff is an individual with his primary residence in New York County, in the State of New York.

2.    On information and belief, Defendant HK INVESTIGATIONS (hereinafter "HK") is a domestic corporation with its primary place of business in Nassau County, in the State of New York.

3.    On information and belief, Defendant DAVID J. GOLD is an attorney licensed to practice law in the State of New York and DAVID J. GOLD, PC is a domestic Professional Corporation providing legal services, with its principal place of business at 116 John Street, Suite 3110, in New York City, New York County, in the State of New York.

4.     On information and belief, Defendant STEPHANIE BOWMAN d/b/a SUPREME

JUDGMENT RECOVERY, INC. (hereinafter "SUPREME JUDGMENT") has her principal

place of business in Queens County, in the State of New York.  Supreme Judgment conducts

significant business in New York County, in the State of New York.

5.     On information and belief, Defendant THOMAS W. ARCHER is an attorney

licensed to practice law in the State of New York.

## JURISDICTION AND VENUE

6.     This court has jurisdiction over this action under Article 3 of the New York Civil

Practice Law and Rules (C.P.L.R.) because all parties are residents in or have their principal

offices in the State of New York.

7.     Venue is proper in the County of New York pursuant to C.P.L.R. § 503(a), due to

the Plaintiff's residence in New York County.

## CLASS ACTION ALLEGATIONS

8.     Plaintiff brings this action both as individual and on behalf of a class of similarly

situated individuals, pursuant to Article 9 of the C.P.L.R.

9.     The class includes all judgment debtors whose funds were improperly restrained

and/or levied upon by defendants in execution of a judgment without complying with lawful

procedures for restraint and levy.

10.    The class is so numerous that joinder of all members is impracticable.  On

information and belief, defendants have improperly restrained and/or levied upon funds of

several hundred individuals.

11.    There are questions of law and fact concerning Defendants' debt collection

practices with regard to judgment debtors that are common to the class and that predominate over any issues affecting individual plaintiffs.

12.     The claims of plaintiff Grigori Zaichik are typical of the claims of the class.  The named individual plaintiff was a judgment debtor, whose funds were improperly restrained and then levied upon in execution of a judgment without following lawful procedures for restraint and levy.

13.     The representative plaintiff will fairly and adequately protect the interests of the class.  Plaintiff was himself a judgment debtor, whose funds were improperly restrained and levied upon by defendants in execution of a judgment against him, and has a material interest in ensuring that such actions do not continue.  Plaintiffs are represented by attorneys from Cardozo Bet Tzedek Legal Services who are experienced and skilled in class action litigation both in federal and state courts.

14.     Because the plaintiff class is unaware of these improper debt collection practices and are, as of yet, unidentified, a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

## FACTUAL ALLEGATIONS

### Initiation of Civil Court Action, Lack
### of Notice, and Default Judgment

15.     Plaintiff is a 60-year-old retired man who had cardiac surgery in June of 2006.

16.     Plaintiff has bank accounts at Chase Manhattan Bank and Apple Savings Bank containing his life savings and only assets.

17.     On October 1, 2003, a lawsuit was initiated by GOLD, representing "Howard,

Adams & Rose." as assignee of Bank One, against Plaintiff, Grigori Zaichik, and his brother

Leonard Zaichik to collect on an allegedly unpaid credit card debt.  Howard, Adams & Rose, as

Assignee of Bank One v. Leonard T. Zaichik and Gregory T. Zaichik, Civil Court of the City of

New York, County of New York, Index No. 56977-2003. (Hereinafter "Civil Court action.") **(See**

**Exhibit A, attached.)**

18.     Plaintiff did not incur the alleged unpaid credit card debt and knew nothing about

the alleged account.

19.     On information and belief, GOLD did no independent investigation of the facts of

the underlying claim before filing the Civil Court action and did not review the relevant

documents relating to the claim.

20.     Plaintiff received no notice of the Civil Court action and therefore could not

answer the complaint.

21.     On February 5, 2004, a default judgment in the amount of $20,561.11 was entered

on the Civil Court action against the plaintiff Zaichik and his brother, Leonard T. Zaichik. **(See**

**Exhibit B, attached.)**

22.     The $20,561.11 default judgment in the Civil Court action consisted of the alleged

$15,084.00 debt, plus $5,317.11 interest, plus $160.00 in court costs and disbursements; the

transcript of judgment indicates an additional $40.00 prospective fee.

**First Attempt to Improperly
Restrain Funds in Satisfaction of the Judgment**

23.     On information and belief, GOLD, after obtaining the February 5, 2004

judgment, hired HK to collect the judgment.

4

24.     On information and belief, HK requested that SUPREME JUDGMENT collect on the judgment.

25.     SUPREME JUDGMENT and HK knowingly and falsely represented that they were parties that were legally entitled to collect on the money by fraudulently substituting their names in the Information Subpoena and Restraint Notice served on Chase Manhattan Bank. **(See Exhibit C, attached.)**

26.     On information and belief, SUPREME JUDGMENT and/or HK never filed an assignment with any court in the County of New York, as required under C.P.L.R. § 5019(c).

27.     The Information Subpoena and Restraining Notice, described above, was signed by ARCHER as "attorney for the judgment creditor" and dated on August 8, 2006.

28.     On information and belief, ARCHER signed the Information Subpoena and Restraining Notice without conducting an investigation into the validity of the claim, which would have revealed the improper caption and lack of authority of both SUPREME JUDGMENT and HK.

29.     Plaintiff did not receive the notice required by C.P.L.R. § 5222(d) mandating that the judgment debtor be sent a copy of the Restraining Notice and a further notice concerning exempt assets.

30.     On information and belief, the reason plaintiff did not receive the C.P.L.R. § 5222(d) notice was that the defendants never sent it.

### Chase Bank Notification, First Order to Show Cause and Vacated Judgment

31.     On August 22, 2006, Chase Manhattan Bank notified Plaintiff, by mail, of the Information Subpoena and Restraining Notice that had been served on them. **(See Exhibit D,**

**attached.)**

32.    This letter from Chase Manhattan Bank was the first notice that Plaintiff received about the pending Civil Court action, despite the fact that the Civil Court action was commenced on October 1, 2003.

33.    Plaintiff, at that point pro se, and responding to the letter from Chase Manhattan Bank, went to Civil Court on August 30, 2006, and filled out forms to get an Order to Show Cause.

34.    On August 31, 2006, the court (Hon. Joan M. Kenney) signed the Order to Show Cause with a stay, which read in pertinent part: "all proceedings on the part of the Plaintiff(s), Plaintiff(s) attorney(s) and agent(s) and any Marshal or Sheriff of the City of New York for the enforcement of said Judgment be stayed." The Order to Show Cause was returnable on September 13, 2006. **(See Exhibit E, attached.)**

35.    On September 1, 2006, Plaintiff mailed the Order to Show Cause by First Class Mail with Official Post Office Certificate of Mailing to GOLD, as required by the Order. **(See Exhibit F, attached.)**

36.    Thereafter, plaintiff received a notice dated August 30, 2006 from Marshal Henry Daley, which still had an incorrect caption, entitled "Notice to Judgment Debtor," with an attached Notice of Execution. **(See Exhibit G, attached.)**

37.    Because Plaintiff had obtained an Order to Show Cause with a stay on August 31, 2006, he took no action with respect to this notice.

38.    On September 13, 2006, the return date of the Order to Show Cause, GOLD appeared for Howard, Adams and Rose. The parties (with Plaintiff herein now represented by

6

current counsel) agreed to adjourn until October 19, 2006.  At that time, GOLD assured Plaintiff

that he would "look into" the underlying claim and discontinue the Civil Court action if he found

it to be meritless.

39.     At this point, relying on the Court ordered stay, Plaintiff assumed that his money

was not executed upon and still in his bank accounts, albeit restrained.

40.     On the next court date, October 19, 2006, Plaintiff's attorney and GOLD

stipulated to vacate the judgment, and to give Zaichik 30 days to answer the Civil Court

complaint, in exchange for an agreement not to contest service of process.  **(See Exhibit H,**

**attached.)**

41.     On October 20, 2006, Plaintiff went to a branch of Chase Bank with a copy of the

stipulation and order vacating the judgment, and attempted to withdraw money from his account.

## Discovery of Earlier Illegal Restraint
## and Levy on Chase Manhattan Account

42.     Plaintiff assumed that, because of the now vacated judgment, his account would

no longer be frozen.  Chase Bank, however, advised plaintiff that there was a problem with the

stipulation vacating the judgment because it had a different caption from the restraining notice.

That discrepancy was a result of HK and ARCHER unilaterally changing the caption to substitute

HK as plaintiff.

43.     In the course of trying to straighten out the problem with the caption, Plaintiff's

lawyers finally learned that the difficulty was not merely the wrong caption, but that

unbeknownst to the plaintiff and in violation of the stay, his money at the Chase Bank had

actually already been executed upon.

44.     Plaintiff discovered that, despite the court ordered stay, in September 2006, Marshal Daley had executed on the default judgment on behalf of HK and SUPREME JUDGMENT, seizing $24,391.71 from Plaintiff's Chase Manhattan account.

45.     Upon learning of the improper execution, Plaintiff's attorney contacted GOLD, who claimed that he had no knowledge of the September execution, and assured Plaintiff's attorney that he would "look into the situation."

46.     On October 26, 2006, Plaintiff's attorney called HK and spoke with Ronald Hughes, apparently the owner of HK, who stated that the fees and interest had already been paid to ARCHER, poundage had been paid to Marshal Daley, and HK had already assessed a fee.

47.     HK stated that because of this, it would be difficult to return the full amount of money that had been improperly executed.

## Attempt to Improperly Levy Upon
## Apple Bank Account

48.     On October 31, 2006, Plaintiff informed his attorneys that he had received a letter from Apple Bank, attaching a Notice of Levy and Execution with Notice to Garnishee, attempting to levy upon $8,565.31. **(See Exhibit I, attached.)**

49.     The letter from Apple Bank was the first and only notice received by Plaintiff of the levy and execution.

50.     In receiving this document, Plaintiff learned that on September 27, 2006, ARCHER, acting as attorney for SUPREME JUDGMENT, had submitted another Execution with Notice to Garnishee to City Marshal Daley. **(See Exhibit I, attached, at 3.)**

8

51.     ARCHER, acting as attorney for SUPREME JUDGMENT, continued to use the fraudulently changed caption on the Execution with Notice to Garnishee, listing the plaintiff as "Supreme Judgment Recovery, as assignee of H & K Investigations."

52.     Never before had Plaintiff heard of or received notice of the execution to his Apple Bank account.

53.     The attempted seizure of $8,565.31 was far in excess of the $20,561.11 judgment, given that Defendants had already seized $24,391.71.   Additionally, the Defendants incorrectly listed the judgment as being for $25,307.35.

## Second Order to Show Cause and Stay

54.     Plaintiff's attorney obtained a new Order to Show Cause in the Civil Court action, seeking restitution of the funds in Chase Bank wrongfully levied upon, and vacating the new levy on the Apple Bank Account. The Order was signed on November 1, 2006, and specified that "petitioner, petitioner's attorney, agents, successors, employees or assignees and any Marshal or Sheriff of the City of New York be STAYED from taking any actions to execute or levy upon the judgment herein." **(See Exhibit J, attached.)** The Order to Show Cause was returnable on November 14, 2006.

55.     On November 2, 2006, Plaintiff personally served GOLD with a copy of the second Order to Show Cause and served HK, SUPREME JUDGMENT and Marshal Daley by mail and fax with copies of the same.  **(See Exhibit K, attached.)**

56.     On November 6, 2006, George Klidonas, Legal Intern, spoke to Stephanie Bowman of SUPREME JUDGMENT, who admitted that neither SUPREME JUDGMENT nor

HK were judgment creditors in the Civil Court action, thus not entitling them to substitute their names as assignees of the debt.

57.     On November 7, 2007, George Klidonas, Legal Intern, spoke to GOLD who admitted that he had no knowledge of SUPREME JUDGMENT's participation and only hired HK to collect on the debt, but never investigated or supervised HK's conduct.

58.     On November 14, 2006, the return date for the second Order to Show Cause, Plaintiff and GOLD appeared at the Civil Court. Hon. Cynthia S. Kern found that funds had been taken improperly from Plaintiff's account pursuant to a vacated judgment, and ordered the return of all funds to Plaintiff, vacating all restraining notices until then issued.  (See Exhibit L, attached.)

59.     On November 16, 2006, Plaintiff served a certified copy of Judge Kern's November 14 order, with notice of entry, on GOLD by mail. (See Exhibit M, attached.)

60.     On November 20, 2006, Plaintiff filed an answer to the original Civil Court complaint. (See Exhibit N, attached.)

61.     On the same day, Plaintiff served a copy of the answer on GOLD by fax.  (See Exhibit O, attached.)

62.     On November 29, 2006, George Klidonas, Legal Intern, spoke to Stephanie Bowman of SUPREME JUDGMENT, who admitted that she had improperly changed the caption, but blamed GOLD for not filing a proper assignment or informing HK about the vacated judgment.

### Return of Some Funds

63.     On December 5, 2006 Marshal Daley sent a check for $24,391.71 to Plaintiff.

64.     This check does not cover the lost interest and bank fees and other injuries

suffered by Plaintiff throughout the time period.


## Injuries Sustained as a Result of
## Defendants' Conduct

65.     Plaintiff was not working and the money restrained and seized was essentially all

of his life's savings.  Plaintiff was anxious over the possibility that he would not be able to afford

medications for his cardiac condition and would be unable to pay health insurance premiums. He

was distraught and upset about the situation and frightened about the future. He suffered

psychological and emotional distress and insomnia.

66.     In addition, Plaintiff incurred bank charges and penalties, and lost interest that his

accounts would otherwise have earned.

## The Defendant's Debt
## Collection Practices

67.     On information and belief, GOLD has acted as the attorney and obtained

judgments in over one thousand debt collection cases over the past five years, eighty-eight of

which were on behalf of Howard, Adams and Rose as creditor.

68.     On information and belief, the above described practices are typical of the

Defendant's debt collection practices and have caused harm to a number of alleged debtors

whose funds were improperly restrained and levied upon.

## AS AND FOR A FIRST CAUSE OF ACTION – Violation of the Fair Debt Collection
## Practices Act, 15 U.S.C. § 1692 *et seq.*

69.     Defendants' intentionally misrepresented the amount and legal status of the debt,

in violation of 15 U.S.C. § 1692e(2)(A).

70.     By restraining and executing funds, using documents with a made-up caption, and other incorrect information, the Defendants used a written communication that falsely represented to be a document authorized, issued or approved by a court, in violation of 15 U.S.C. § 1692e(9).

71.     Defendants intentionally used deceptive means to collect or attempt to collect the debt from Plaintiff, in violation of 15 U.S.C. § 1692e(10) by knowingly violating a court order staying execution of the judgment on three different occasions.

72.     Defendants intentionally or knowingly used deceptive means to collect or attempt to collect the debt from Plaintiff, in violation of 15 U.S.C. § 1692e(10) by giving the false impression that an attorney as an officer of the court was overseeing the collection activities, when, in reality, there was no supervision by an attorney and no due diligence to determine the amount or status of the judgment.

73.     Defendants failed to meaningfully involve an attorney in investigating the validity of the claim, in violation of 15 U.S.C. § 1692e(3).

74.     Defendants intentionally attempted to collect an amount far in excess of the amount that was legally authorized in violation of 15 U.S.C. § 1692f(1).

## AS AND FOR A SECOND CAUSE OF ACTION – Deceptive Business Practices: Violation of New York General Business Law § 349.

75.     By the above described actions, Defendants acted in a materially deceptive and misleading manner and caused pecuniary injury to the Plaintiff, in violation of New York General Business Law § 349.

## AS AND FOR A THIRD CAUSE OF ACTION – Abuse of Process

76.     Defendants wrongfully and maliciously, and with intent to injure the Plaintiff, issued various Information Subpoenas and Retraining Notices with fraudulently changed captions.

77.     Defendants wrongfully and maliciously, and with intent to injure the Plaintiff, issued an Information Subpoena and Restraining Notice to Apple Bank in an attempt to collect on a judgment that had already been vacated.

78.     Defendants wrongfully and maliciously, and with intent to injure the Plaintiff issued an Information Subpoena and Restraining Notice to Apple Bank in an attempt to collect far in excess of the amount that they were permitted to collect.

79.     The Information Subpoenas and Restraining Notices were intended to improperly restrain money that the defendant's were not entitled to restrain and wrongfully deprived the Plaintiff of his property and compelled the Plaintiff to hire an attorney to recover his property.

80.     Defendants used the above court process in a perverted way in order to obtain the collateral objective of obtaining money to which they were not entitled.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court issue an order:

1. Directing Defendants to identify all judgment debtors whose funds were restrained and/or levied upon by them.

2. Certifying that this action may be maintained as a class action, pursuant to Article 9 of the Civil Practice Law and Rules.

13

3. Enjoining Defendants from restraining and levying upon debts in execution of a judgment against a judgment debtor in violation of the Federal Fair Debt Collection Practices Act, New York General Business Law § 349 and the procedures set forth in the Civil Practice Law and Rules:

4. Granting Plaintiffs actual damages, including interest, in an amount to be determined by the Court.

5. Granting Plaintiffs punitive damages as is permitted by the Fair Debt Collection Practices Act, 15 U.S.C. § 1692k(a)(2)(B).

6. Granting reasonable costs and attorney's fees, pursuant to New York General Business Law § 349(h) and the Fair Debt Collection Practices Act, 15 U.S.C. § 1692k(a)(3).

7. Granting any other and further relief as the Court deems just and proper.

Dated: April 13, 2007
New York, New York

---

TOBY GOLICK
Attorney for Plaintiff
CARDOZO BET TZEDEK LEGAL SERVICES
55 Fifth Avenue, 11th Floor
New York, New York 10003
(212) 790-0240

GEORGE KLIDONAS, Legal Intern
LAWRENCE BLUESTONE, Legal Intern.