UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------X
UNITED STATES OF AMERICA,

NOTICE OF MOTION

-against-                                         08-CR-288

THOMAS ARCHER and RUKHSANA
RAFIQUE a/k/a "Ruckhsana Rukhsana",               FILED ELECTRONICALLY

Defendant.
-----------------------------------------------------X

PLEASE TAKE NOTICE that the Defendant, THOMAS ARCHER, upon the annexed

Declaration and Memorandum of Law with attached exhibits will move this Court on the 7th day

of May 2010, before Honorable Sterling Johnson, Jr. United States District Judge, Eastern

District of New York, at 10:00 A.M., in the United States Courthouse, located at 225 Cadman

Plaza, Brooklyn, New York or at a time that is convenient for the Court, for an Order granting

the following relief:

      (1) For an Order pursuant to Rule 29 (c ) of the Federal Rules of Criminal Procedure
          granting the Defendant's motion for a judgment of acquittal or in the alternative;

      (2) For an Order pursuant to Rule 33 of the Federal Rules of Criminal Procedure granting
          the Defendant's motion setting aside the verdict and ordering a new trial.

      (3) For such other and further relief this Court may deem just and proper.

Dated: April 16, 2010
Ridgewood, New York

Very truly yours,

_____/s/_____
Karina E. Alomar, Esq.
Attorney for Thomas Archer
60-89 Myrtle Avenue
Second Floor
Ridgewood, NY 11385
(718) 456-1845

To: Hon. Sterling Johnson, Jr.
United States District Judge
Eastern District of New York
United States Courthouse
225 Cadman Plaza
Brooklyn, NY 11201

Andrew Goldsmith, Esq.
United States Attorney's Office
271 Cadman Plaza East
Brooklyn, New York 11201

Mildred Whalen, Esq.
Federal Defenders of New York
Attorney for Defendant
Rukhsana Rafique
One Pierrepont Plaza, 16th Floor
Brooklyn, New York 1120

Karina E. Alomar, Esq.
60-89 Myrtle Avenue
Ridgewood, NY 11385
Telephone:  (718) 456-1845
Fax:  (718) 386-9299

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------X

UNITED STATES OF AMERICA,

08CR288 (S-1) (SJ)

DECLARATION

v.

Filed by EFC

THOMAS ARCHER

-----------------------------------------------X

STATE OF NEW YORK            }
COUNTY OF QUEENS             }SS::
EASTERN DISRICT OF NEW YORK  }

KARINA E. ALOMAR, ESQ., pursuant to Title 28, United States Code, § 1746, hereby

declares under the penalties of perjury:

1.      I am counsel for the defendant, THOMAS ARCHER, and I make this declaration

in support of the various forms of relief as set forth in the annexed Notice of Motion.

2.      The statements asserted as facts are based upon an examination of the trial record

and the indictment.  All matters about which deponent lacks personal knowledge is asserted

herein upon information and belief.

3.      THOMAS ARCHER was indicted on May 2, 2008, which indictment was

thereafter superseded on January 14, 2009.  Upon the commencement of the trial the

1

Government moved to dismiss count three of the indictment and the Defense joined in the application. The Government moved forward at trial with counts one, two, four and five.

4.    The indictment read as follows:

### Count one

1.    In or about and between July 2004 and December 2005, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants THOMAS ARCHER and RUKHSANA RAFIQUE, also known as "Rukhsana Rukhsana," together with others, did knowingly and willfully conspire to subscribe as true, under penalty of perjury under Title 28, United States Code, Section 1746, one or more false statements with respect to material facts in applications and other documents required by the immigration laws and regulations prescribed thereunder, and present one or more applications and other documents which contained false statements with respect to a material fact and which failed to contain a reasonable basis in law and fact, all in violation of Title 18, United States Code, Section 1546(a).

2.    It was part of the conspiracy that the defendant THOMAS ARCHER operated the Law Offices of Thomas W. Archer, P.L.L.C., which from approximately May 1, 2005, to March 30, 2006, was located at 74-09 37th Avenue, Suite 405, Jackson Heights, New York, and from approximately April 1, 2006, to January 30, 2007 was located at 146-10 Hillside Avenue, Jamaica, Queens.    At all relevant times the defendant RUKHSANA RAFIQUE was employed as defendant THOMAS ARCHER's assistant.

3.    It was further part of the conspiracy that the defendants THOMAS ARCHER and RUKHSANA RAFIQUE engaged in the business of obtaining immigration benefits for citizens of countries other than the United States through the preparation and submission of Forms I-687 to the Department of Homeland Security ("DHS").

4.    It was further part of the conspiracy that, in exchange for fees, the defendants THOMAS ARCHER and RUKHSANA RAFIQUE, in order to obtain Temporary Resident Status for clients, falsely represented in the Forms I-687 that their clients entered the United States prior to January 1, 1982, and that, except for brief absences, they had remained continuously in the United States since their date of arrival

2

5.     In furtherance of the conspiracy and to effect its objectives, within the Eastern District of New York and elsewhere, the defendants THOMAS ARCHER and RUKHSANA RAFIQUE, together with others, committed and caused to be committed, among others, the following:

## OVERT ACTS

a.     In or about June 2005, at the Law Office of Thomas Archer, P.L.L.C., the defendant RUKHSANA RAFIQUE interviewed a client (Gulistan NLN).

b.     On or about July 6, 2005, the defendant THOMAS ARCHER submitted a Form I-687 on behalf of Gulistan NLN falsely representing that Gulistan NLN had resided continuously in the United States since prior to January 1, 1982.

e.     In or about November 2005, at the Law Office of Thomas Archer, P.L.L.C., the defendant RUKHSANA RAFIQUE interviewed a client (Nizar Ahmad).

f.     On or about December 13, 2005, the defendant THOMAS ARCHER submitted a Form I-687 on behalf of Nizar Ahmad falsely representing that Nizar Ahmad entered the United States prior to January 1, 1982.

g.     In or about December 2005, at the Law Office of Thomas Archer, P.L.L.C., the defendant RUKHSANA RAFIQUE interviewed a client (Iris Ally).

h.     On or about January 5, 2006, the defendant THOMAS ARCHER submitted a Form I-687 on behalf of Iris Ally falsely representing that Iris Ally entered the United States prior to January 1, 1982.

(Title 18, United States Code, Sections 371 and 3551 et seq.)

## COUNTS TWO, FOUR AND FIVE

### (Visa Fraud)

6.     The allegations contained in paragraphs one through five are realleged and incorporated as if fully est forth in this paragraph.

7.     On or about the dates set forth below, within the Eastern District of New York, the defendants THOMAS ARCHER and RUKHSANA RAFIQUE, also known as "Rukhsana Rukhsana," did knowingly present an application and other documents required by the immigration laws and regulations prescribed thereunder, which contained false statements with respect to material facts and

3

which failed to contain any reasonable basis in law and fact, to wit,
the applications and other documents set forth below:

| COUNT | APPLICANT | DOCUMENT SUBMISSION DATE (approximate) |
|-------|-----------|----------------------------------------|
| TWO | Gulistan NLN | July 6, 2005 (Form I-687) |
| FOUR | Nizar Ahmad | December 13, 2005 (Form I-687) |
| FIVE | Iris Ally | January 5, 2006 (Form I-687) |

(Title 18, United States Code, Sections 1546(a), 2 and 3551 et seq.)

5.    THOMAS ARCHER was convicted of all counts of superseding

indictment after a trial by jury before this Court.

6.    By way of the instant motion, THOMAS ARCHER now moves this Court

for a judgment of acquittal, pursuant to Rule 29(c) of the Federal Rules of Criminal

Procedure, or in the alternative, an Order granting a new trial, pursuant to Rule 33 of the

Federal Rules of Criminal Procedure on the following grounds:

> (a) The evidence adduced at trial was insufficient to support the count of
> Conspiracy to Commit Visa Fraud charged in the indictment with
> respect to the element of "membership" in violation of Title 18, United
> States Code Section 1546(a)

> (b) The evidence adduced at trial was insufficient to support the count of
> visa fraud with respect to Gulistan charged in the indictment with
> respect to the element of "knowing" in violation of Title 18, United
> States Code Section 1546(a)

> (c) The evidence adduced at trial was insufficient to support the count of
> visa fraud with respect to Nizar Ahmad charged in the indictment with
> respect to the element of "knowing" in violation of Title 18, United
> States Code Section 1546(a)

> (d) The evidence adduced at trial was insufficient to support the count of
> visa fraud with respect to Iris Ally charged in the indictment with
> respect to the element of "knowing" in violation of Title 18, United
> States Code Section 1546(a)

7.    THOMAS ARCHER incorporates all of the arguments contained in the

Memorandum of law, as annexed hereto as Exhibit "A" as if set forth fully herein.

WHEREFORE, your delcarant prays for an Order granting the relief requested in

the Notice of Motion, or in the alternative a hearing to resolve the issues raised therein

and for such other and further relief as to this Court may deem just and proper.

Dated: Ridgewood, NY
     April 16, 2010

s/      KARINA E. ALOMAR
KARINA E. ALOMAR,ESQ.
60-89 Myrtle Avenue
Ridgewood, NY 11385
Telephone No.: (718) 456-1845
Fax No.: (718)386-9299
alomar.associatespc@gmail.com

To: Hon. Sterling Johnson, Jr.
United States District Judge
Eastern District of New York
United States Courthouse
225 Cadman Plaza
Brooklyn, NY 11201

Benton J. Campbell
United States Attorney
Eastern District
Attention: Andrew E. Goldsmith
Assistant U.S. Attorney
271 Cadman Plaza
Brooklyn, NY 11201

Mildred Whalen, Esq.
Federal Defenders of New York
Attorney for Defendant
Rukhsana Rafique
One Pierrepont Plaza, 16th Floor
Brooklyn, New York 1120

# EXHIBIT A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------X
UNITED STATES OF AMERICA                    CR NO.; 08 CR 288


THOMAS ARCHER and                            Filed Electronically


RUKHSANA RAFIQUE
      Also known as
      "Rukhsana Rukhsana"

--------------------------------------------------X

## **MEMORANDUM OF LAW
IN SUPPORT OF POST-TRIAL
MOTION FOR DEFENDANT THOMAS ARCHER**


This Memorandum of Law is submitted on behalf of defendant Thomas Archer, in

support of his motion for an order setting aside the jury verdict pursuant to Rule 29(c) of the

Federal Rule of Criminal Procedure and/or in the alternative an order granting a new trial

pursuant to Rule 33 of the Federal Rules of Criminal Procedure on the grounds that

        (a) The evidence adduced at trial was insufficient to support the count of
           Conspiracy to Commit Visa Fraud charged in the indictment with respect to
           the element of "membership" in violation of Title 18, United States Code
           Section 1546(a)

        (b) The evidence adduced at trial was insufficient to support the count of visa
           fraud with respect to Gulistan charged in the indictment with respect to the
           element of "knowing" in violation of Title 18, United States Code Section
           1546(a)

        (c) The evidence adduced at trial was insufficient to support the count of visa
           fraud with respect to Nizar Ahmad charged in the indictment with respect to
           the element of "knowing" in violation of Title 18, United States Code Section
           1546(a)

        (d) The evidence adduced at trial was insufficient to support the count of visa
           fraud with respect to Iris Ally charged in the indictment with respect to the
           element of "knowing" in violation of Title 18, United States Code Section
           1546(a)

As detailed more fully below, these grounds, either independently or collectively, compel acquittal for Mr. Archer on each conviction, or at the very least, a new trial on each count.

Accordingly, it is with the utmost respect and urgency that Mr. Archer submits that his motion for a judgment of acquittal or in the alternative a new trial be granted in its entirety.

## STATEMENT OF FACTS

On March 4, 2008, Thomas Archer (hereinafter "Archer"), an attorney along with his secretary Rukhsana Rafique (hereinafter "Rafique") were arrested in their respective homes. The Government charged that Archer and Rafique, along with others, conspired to commit visa fraud and committed visa fraud by knowingly subscribing as true, any false statement with respect to material fact in any application, affidavit, or other document required by the immigration laws or regulations prescribed there under, or knowingly presents any such application, affidavit, or other document which contains any such false statement or which fails to contain any reasonable basis in law or fact

On March 15, 2010, Archer went to trial before Your Honor, under a four count indictment (hereinafter "instant case"). The indictment charged one count of Conspiracy to Commit Visa Fraud, and Three counts of Visa Fraud[1]. See Third Superseding Indictment Cr. 08—288(SJ)

I.                              **THE GOVERNMENT'S EVIDENCE**

Even when the Government's evidence is viewed as a whole, in the most favorable light, and with all reasonable inferences drawn in its favor, the proof still fails to establish that a rational trier of fact could have fairly concluded that the Government met its burden of proof.

---

[1] During Archer's trial the Government moved to dismiss Count 3, Visa Fraud as to Rahul Gupta, which was granted by the Court.

The Government's case[2] consisted of the testimony of Mel Shatzkamer (hereinafter "Shatzkamer") from the Department of Homeland Security in addition to the testimony of Iris Ally, Gulistan NLN, Nizar Ahmad and Mohammed Ally four individuals on whose behalf Archer submitted I-687 applications, along with two consensually recorded meetings (hereinafter "recordings"), made on May 21, 2007, and June 7, 2007. The recorded meeting that took place on May 2, 2007 was solely between Gulistan NLN, and co-defendant Rukhsana, and the June 7, 2007, meeting was between Gulistan, Archer and Rukhsana.

Mel Shatzkamer testified at trial, as part of the Government's case, for the purpose of describing the immigration program under which it was being alleged that Archer had submitted applications with false information, and to describe the patterns found in Archer's applications, which the Government argument was evidence of fraud.

Mel Shatzkamer testified that he worked for past twenty-three (23) years in the Department of Homeland Security, United States Citizenship and Immigration Services, in the fraud detection national security unit. Mel Schatzkamer then testified with respect to the Immigration Reform and Control Act of 1982 explaining that the program allowed undocumented alien to become temporary residents, and eventually permanent residents. According to Shatzkamer's testimony the program which closed on May 4, 1988 was re-opened in early 2004, with a filing period from May 2004, until December of 2005, as a result of several class action suits referred to as CSS Newman and LULAC.

According to Shatzkamer the re-opening of the program under the class action settlement allowed those individuals who were physically present in the United States as of January 1,

---

[2] During the course of this memorandum I will attempt to review the entirety of the evidence consisting of the testimony of Mel Shatzkamer four individuals on whose behalf Archer Submitted I-687 applications, an audio recording created by Gulistan and the statement of Mel Shatzkamer of the Department of Homeland Security with respect to the review of Archer's files.

1982, and had attempted to file an application during the period of May 5, 1987, and May 4, 1988, but were turned away and discouraged from filing because of brief, innocent, and casual departures from the United States to apply for the program. Shatzkamer testified that the rules governing trips outside the United States were "proof that you met the requirements through physical presence or continuous residence. Physical presence was from the period of 1986 until the period you attempted to file or were turned away which was May 4,1988" Shatzkamer further stated that "if you were out, you were allowed one entry out of the United States, not to exceed thirty days." Shatzkamer then explained the continuous residence requirement as being: "if you were physically present as of January 1, 1982, you were allowed a trip out of the United States until the date you had attempted to file during the filing period or the date you were turned away and the end of the filing period was May 4, 1988." Shatzkamer continued his explanation "you were allowed up to forty-five days on one trip. If you had multiple trips, the aggregate or the total number of trips and the time out could not have exceeded thirty days.[3]" Significantly Shatzkamer stated that any trips after 1988 had "no relevance."

After explaining the requirements of the program Mr. Shatzkamer testified as to the questions asked in the applications regarding the applicant's biographical information and work history, and that after reviewing 175 of the applications submitted by Archer's which was approximately seventy-five percent[4] of the total applications submitted by Archer that he made the following observations:

a.  100% of the applicants on whose behalf Archer submitted an application entered without inspection

---

[3] Trial Transcript pages 39-40
[4] Trial Transcript page 75 and 76 Shatzkamer testified that he did not know the number of files submitted by Archer but he believed that there were 10 files that were yet to be adjudicated.

b.  96% of the applicants on whose behalf Archer submitted an application entered the United States in 1981

c.  89.7 % of the applicants on whose behalf Archer submitted an application left the United States between June and October 1987

d.  45 of the applicants on whose behalf Archer submitted an application had fill in the blank affidavits

e.  None of the applications submitted by Archer were granted.

However during cross-examination Shatzkamer was unable to explain how such observations were indicative of fraud. In regards to the fact that none of the applications on whose behalf Archer submitted an application were approved Shatzkamer admitted that the Department of Homeland Security received seventy-nine thousand (79,000) applications nationwide of which only three (3%) percent or two thousand five hundred (2,500.00) applications were approved[5]. Shatzkamer then acknowledged that out of the seventy-nine thousand (79,000) applications received nationwide that he did not know what was the percentage of the applicants who entered the country without inspection versus a visa overstay nor did he have knowledge of the percentage of applicants that entered the United States before 1981 or the national rate of absences reported between June and October 1987[6]. In regards to the fill in the blank affidavits Shatzkamer thereafter admitted that the United States Department of Justice Immigration and Naturalization Service which is now the Department of Homeland Security was using a fill in the blank affidavit entitled form I-488 specifically for the program in question[7].

---

[5] Trial Transcript page 93
[6] Trial Transcript page 90
[7] Trial Transcript page 82 & 92

Shatzkamer then continued to explain that there were many innocent reasons why the applications could have drawn an interviewer's attention. For instance, Shatzkamer testified that if an applicant did not have a job until well past 1981 that would draw an interviewer's attention, and that twenty eight (28) of the applications submitted by Archer did not begin their employment until after 1992. However Shatzkamer then stated that there were lots of innocent explanations for why someone would not have a job, such as the person being a child or teenager[8]. Thereafter when asked if in his review of files for the applicants if he saw evidence of attorney shopping, Shatzkamer stated "I've seen different attorneys listed." Shatzkamer then testified that a third of the files he reviewed had applications for other immigration benefits prepared by attorneys other than Archer[9]. Shatzkamer then admitted that he was not involved in the investigatory portion of the case and he never interviewed any of the applicants or their affiants.

The Government then called to the stand Ms. Iris Ally, an individual for whom Archer had submitted an application for immigration benefits. Ms. Ally testified that she went to the Archer's office because she was referred by her friend Sandy who told her the program was ending on December 31, 2005. Ms. Ally testified that she had no knowledge that her application contained false information until she met with Agent Silverman. However during cross-examination she admitted that she asked numerous people to lie for her and she knew all along she was committing fraud[10]. Ms. Ally testified that her friend Sandy had advised her of the legal fees for the program she was applying for and she went to the office with the required money. Ms. Ally then stated that she met with the receptionist at the office and it was the receptionist to whom she gave both her information and money. Ms. Ally admitted to procuring affidavits that

---

[8] Trial transcript page 94-95
[9] Trial transcript page 119
[10] Trial transcript page 182

falsely stated she was in the United States between January 1, 1982, and May 4, 1988, and thereafter obtained a doctor's note falsely stating she was ill in order to reschedule an immigration interview. According to Ms. Ally she was given the fill-in-the blank affidavits by the receptionist who told her to get it signed and when her employer said it was a crime for him to sign the affidavit she begged him until he signed the affidavit. Ms. Ally then admitted that in order to not have to go to her immigration interview she went to a doctor and asked him to write her a note that she was ill, which he did not want to do, telling her it was against the law, but she begged him until he agreed.

Ms. Ally finally admitted that when Agent Silverman went to her home she was there with her husband Mohammed Ally, and she was scared that she would be arrested. However Ms. Ally testified that Agent Silverman told her that if she helped him with his investigation regarding Thomas Archer she would not be prosecuted[11]. Throughout all of Ms. Ally's testimony she never stated that she met with or spoke to Archer, in fact when asked if she meet Thomas Archer Ms. Ally said "No."[12]

The Government then called Gulistan NLN to the stand. Gulistan testified that spoke Pashto, Russian, Urdo and a little English, had a first grade education and could not read or write in any language. According to Gulistan he worked in fabrics and as a result of his work he lived in Russia and China. Gulistan testified that he learned of Archer in 2005 by "the people who do the cases." Gulistan stated that he went to the office "to file a case myself" when asked what case he stated "'81 case was open. At that time it was '81 case for that purpose[13]" Gulistan stated that the first time he went to the office there were four, five, six, people sitting there and he spoke with them. He stated that Rukhsana was sitting there and she asked him to bring the pictures and

---

[11] Trial Transcript page 182
[12] Trial Transcript page 151
[13] Trial Transcript page 213

passports, and she spoke to him because she knew Urdu. Gulistan testified that on the first day he went to the office he did not meet Archer[14] but later changed his testimony and stated that he did not know who he met over there[15]. While Gulistan's initially stated that it was Rukhsana who told him to sign the applications without ever reading to him the contents of the applications in cross he stated he did not recall if she asked him questions other than how many kids he had, and his parent's name[16].

Gulistan thereafter testified that in the past he had agents and/or friends prepare immigration papers on his behalf and when questioned as to the petition he filed to extend his visa he stated that he did not know what his agent had written in the petition.[17] When questioned about the affidavits he submitted in support of his application Gulistan attempted to minimize his role by testifying that Archer and Rukhsan gave him affidavits claiming that they said he needed a guarantee of two people who are citizens[18]. According to Gulistan he gave Archer and Rukhsana the names for the affidavits but he took the affidavits to his friends for their signature.

When questioned about his interview at 26 Federal Plaza in regards to his application, Gulistan admitted that he appeared at the interview alone, and that he was sworn in and recalled that the immigration officer said "Speak, I will be able to understand."[19] When asked about his statements to the immigration officer regarding his travels he claims that he did not recall, in fact he started denying that he was questioned about his departures from the United States and then stated "And I didn't know English." "I didn't know anything"[20] However later on during cross examination Gulistan states "when I went to the Judge, he asked me the questions and there—I

---

[14] Trial Transcript page 215
[15] Trial Transcript page 283
[16] Trial Transcript page 284
[17] Trial Transcript page 273
[18] Trial Transcript page 227
[19] Trial transcript page 289
[20] Trial Transcript page 290

had a little knowledge about those traveling…" Gulistan's immigration file which was admitted into evidence as part of Government's Exhibit number 4 shows that Gulistan was sworn in by District Adjudicating Officer Betty Coleman and that she wrote the answers to his questions and not as the Government implied that Officer Coleman just wrote the answers that were in Gulistan's application.

Gulistan testified to not remembering what Agent Silverman stated to him except that the first time agent Silverman met with him he was asked to make a recording. In the first recording Archer is not present, and Gulistan clearly tells Rukhsana that he was here in 1981, and when he responds no to the question of whether he stayed in this country for eight or nine years, from 1981 to '90, he is asked by Rukhsana "then why did you file this case" which he replies "You people did this case. What do I know? If I could read, then I would not have asked you. If I were educated and I could understand these things, I would not have asked you." In response to Gulistan's claim of ignorance as to the contents of his application the recording is clear that Ruksana then states to Gulistan "Gulistan, didn't we write these dates with you after asking you? Didn't we tell you?"

In the second recording where Gulistan tapes a conversation between himself, Archer and Ruksana there is no discussion as to advice, promises or any statements that were made to him at the time of his application, which is the period in question as the Archer is being accused of submitting false statements to immigration, knowing that the statements were false. The recording which shows that Gulistan and Archer cannot communicate absent a translator only has Archer stating in 2007 "I told him not to go to the interview-they are messing with them." The statement made by Archer does not indicate that Archer knew in 2005 that the application contained false information. The Government hypothesizes that the statement had to mean that

Archer knew the application had false information when it was submitted in 2005. However, a hypothesis is not evidence. Archer has never disputed that after the applications were submitted he discovered some of the applicants had lied, what he has always disputed is that he knew the applications contained false statements when they were filed, or its supporting documentation was filed. Gulistan admitted during the trial that when he received his notification for an interview that he met with Archer. Thus, it is reasonable to infer that while preparing for the interview Archer discovered the fraud, and consistent with Archer's non-fraudulent intent he told Gulistan to withdraw the case.

Archer's statement where he is recorded saying that he told Gulistan not go to the interview and to withdraw the case was the only proper and ethical thing to say once he discovered Gulistan's falsehoods. Had Archer not told Gulistan to withdraw the case and prepared Gulistan for the interview Archer would have been coming fraud. By Archer telling Gulistan to withdraw the case and not go to the interview he was acting in an ethical manner as he attempting to have the client stop the further commission of fraud. The comment that was made by Archer where he stated he had told Gulistan at the time he advised him to withdraw that "they are messing with them" also does not indicate fraud; as rather than berating Gulistan for committing fraud the comment can also be interpreted as the best way to get Gulistan to withdraw his case after his fraud was discovered, to prevent him from going to an interview and commit a further crime by making a false statement. If Archer had in fact submitted applications knowing that they contained false information, and then had his clients withdraw the applications then each and every one of the applicants on whose behalf Archer submitted an application would have had a withdrawal notice; however, that was not the case. A review of Government's

Exhibit 4 shows that every file does not have a withdrawal from Archer, and that a third of the files as testified by Shatzkamer had evidence of attorney shopping.

Throughout his testimony Gulistan claims that he had no knowledge as to the requirements for the 81 cases that testified was the specific reason he went to the law office. However during cross Gulistan admitted to meeting an individual, an Indian individual with a turban and when being further asked in cross as to his requesting information about the program he replied "when you are sick and feeling unwell, you ask many people how can I recover. So I used to ask this question many people." It is respectfully submitted that Gulistan's testimony lacked all credibility, was entirely self serving, and should be utterly disregarded by this Court.

However, even to the extent that the Court credits Gulistan's testimony in parts, or its entirety, it is of no real consequence to the Court's evaluation and decision on this motion as Gulistan's credibility is irrelevant to the conspiracy and all the other counts for which Archer was convicted.

Agent's Silverman's testimony also did not provide evidence of fraud on Archer's part. What Agent Silverman's testimony does show is that prior to questioning Gulistan, Nizar Ahmad, Iris Ally and Mohammed Ally that he advised each and every one of them that he was not questioning them for the purposes of arresting them, and instead he would ensure they were not arrested were they to give him information regarding Archer. Agent Silverman's testimony instead shows that the witness had a very strong motive to blame Archer of wrongdoing because to do so would ensure their not being arrested, and that they would have a longer period of time to stay in the United States.

The other two individuals for whom Archer had submitted applications to immigration, Nizar Ahmad and Mohammed Ally both testified that at all times when submitting

their application that they met with Rukhsana and never with Archer. Although both Nizar
Ahmad and Mohammmed Ally testified to signing the applications they claimed that they did not
read the application nor have the contents of the application read to them, yet they both admitted
that they themselves got individuals to sign affidavits on their behalf. Nizar Ahmad claimed that
two individuals who go to the gas station where he works agreed to help him, and Mohammed
Ally got two co-workers to sign the affidavits.

Both men admitted to committing acts of fraud in the years prior to hearing of Archer.
Nizar Ahmad testified that during President Bush's presidency he married a woman in order to
become legalized, however that he did not apply because the program expired. Mr. Ahmad
testified that when he married the American woman he was already married in Pakistan and that
he did not tell the marriage official that he was married in Pakistan because if he did he knew he
would not get married. Mohammed Ally testified that in 2004 he applied for employment
authorization claiming political asylum but that he did not know the 2004 petition for
employment authorization had false information as when he travelled to Florida for the
application he just stood in line and gave his passport and pictures to someone and he just signed
the form, without reading it as he did with Rukhsana. The only contact that Mr. Ally testified to
having with Archer was 2006 when he received notice of the interview and that Archer told him
to withdraw it, but never said why[21]. Again it is reasonable to infer that Archer told Mr. Ally to
withdraw his application because during that meeting in late 2006 Archer discovered that Ally
had lied to him when he filed the application, and the only proper and ethical thing for Archer to
do was tell Ally with withdraw his application.

---

[21] Trial transcript page 537

## II. Mr. Archer's First Rule 29 Motion

On March 22, 2010, after the close of the Government's case defense counsel moved for a judgment of acquittal under Rule 29 of the Rules of Federal Procedure. The Court denied the motion.

## III. Verdict.

On March 24, after a day of deliberations, the jury returned a verdict finding Archer guilty on all the counts in the indictment.

## ARGUMENT

I.  Legal Standard under Rule 29

A Court may grant a motion for acquittal, under Rule 29 of the Federal Rules of Criminal Procedure if, after viewing the evidence in the light most favorable to the Government and drawing all reasonable inferences in its favor, the Court determines that "no rational trier of fact could have concluded that the Government met its burden of proof." United States v. Morrison, 158 F. 3d 34, 49 (2d. Cir.l 1998): see United States v. Irving, 452 F. 3d 110 (2d Cir. 2006) ("A rule 29 motion should only be granted if the district court finds there is no evidence upon which a reasonable mind might fairly conclude guilt beyond a reasonable doubt." (internal quotation marks omitted); accord United States v. Gaskin, 364 F.3d 438, 459-60(2d Cir. 2004).

Although the "defendant challenging the sufficiency of the evidence supporting the conviction faces a 'heavy burden,'" a Court may nonetheless enter a judgment of acquittal if the evidence is insufficient to sustain a conviction. United States v. Glenn 312 F. 3d 58, 63 (2d Cir.1994) (quoting United States v. Matthews, 20 F.3d 538,548 (2d. Cir. 1994). The defendant is well aware that the Court's review must consider "the evidence in its totality" and the

Government "need not negate every theory of innocence." United States v. Autuori, 212 F. 3d

105, 114 (2d. Cir. 2000). "Crediting every inference that could have been drawn in the

Government's favor, we will reject a sufficiency challenge if 'any rational trier of fact could

have found the essential elements of the crime beyond a reasonable doubt.'" United States v.

Jones, 455 F. 3d 134, 143 (2d. Cir. 2006) (quoting United States v. Best 219 F. 3d 192, 200 (2d

Cir. 2000)(Emphasis in original). The Court must also credit the testimony of the Government

witness and "it is not for the court on a Rule 29 motion to make credibility determinations:

"Autouri, 212 F. 3d at 118.

 Here, the critical question that needs to be answered is "whether upon the evidence,

giving full play to the right of the jury to determine credibility, weigh the evidence, and draw

justifiable inferences of fact, a reasonable mind might **fairly** conclude guilty beyond a reasonable

doubt." Autouri, 212 F.3d at 114 (quoting United States v. Mariani, 725 at F2d 865) (Emphasis

supplied).

 However, Your Honor, in considering *and granting* a Rule 29 motion, has noted the

Second Circuit's emphasis "that where a fact to be proved is also an element of the offense...**it is**

**not enough that the inferences in the government's favor are permissible."** U.S. v.

D'Angelo, 2004 WL 315237, 7 (E.D.N.Y. 2004), citing U.S. v. Martinez, 54 F. 3d 1040, 1043

(2d Cir. 1995) (Emphasis supplied). Instead, this Court "must also be satisfied that the inferences

are sufficiently supported to permit a rational juror to find the element, like all elements, is

established beyond a reasonable doubt." Id.,. (citing Martinez, 54 F.3d at 1043.*See also,* United

States v. Soto, 47 F.3d 546, 549 (2d Cir. 1995); United States v. D'Amato, 39 F.3d 1249, 1256

(2d Cir. 1994)). Further this Court has recognized that "if the evidence viewed in the light most

favorable to the prosecution gives *'equal or nearly equal circumstantial support to a theory of*

***guilt and a theory of innocence,'*** then a 'reasonable jury ***must*** necessarily entertain a reasonable doubt.'"" United States v. Glenn, 312 F.3d 58, 70( 2d Cir. 2000), *quoting* United States v. Lopez, 74 F. 3d 575, 577 (5th Cir. 1996.) (Emphasis supplied).

II.  Conspiracy Charge (Count One)

1.  The evidence at trial was insufficient to prove beyond a reasonable doubt that
        Thomas Archer became a member of a conspiracy

The indictment charged that Archer and Rukhsana, along with others, conspired between July 2004 and December 2005, to subscribe as true, under penalty of perjury under Title 28, United States Code, Section 1746, one or more false statements with respect to material facts in applications and other documents required by the immigration laws and regulations prescribed there under, and present one or more applications and other documents which contained false statements with respect to a material fact and which failed to contain a reasonable basis in law and fact, all in violation of Title 18 United States Code, Section 1546(a).

In order for the Government to prove the crime of conspiracy, it needed to prove, beyond a reasonable doubt, two elements:

> First, the Government had to prove that two or more persons
> Entered into the criminal agreement charged; and
>
> Second, that Archer became a member of the conspiracy with
> The knowledge of its criminal goal and intending that the goal
> Succeed by his actions

Specifically, with regard to the second element of "membership" the Government needed to prove beyond a reasonable doubt that Archer, (1) was aware of at least some of the objectives of the criminal conspiracy, and (2) committed some act(s), more than mere presence, toward that objective(s) with intentions of aiding the conspiracy. As this Court has previously warned, and crucial to Mr. Archer's defense is the fact that a person can actually

be aiding a conspiracy and he/she would not be guilty of the crime charged so long as he/she is not aware that a conspiracy existed. In the same vein, a person can have knowledge that a criminal conspiracy exists and that person would not be guilty so long as he/she does not join and intentionally aid in that conspiracy. *See Gleeson Jury Instructions* In other words, being merely present in a place where a criminal conspiracy is occurring, without knowledge of its existence, is not sufficient evidence that such person became a member of the conspiracy. This is the case even where a person may know that a conspiracy exists, and fails to take any actions to stop it. Similarly, aiding in the conspiracy without knowledge and intent also does not make that person a member of the conspiracy.

As a result of the secret nature of a criminal conspiracy, in general, a jury has the right to infer from all the evidence, whether it be circumstantial or indirect, as to whether an actual criminal agreement existed. In this case there are two recordings. One recording between Gulistan and Rukhsana and another between Gulistan, Archer and Rukhsana, a review of the recordings however clearly does not demonstrate that between July 2004 and December 2005 Archer entered into an agreement to subscribe as true one or more false statements with respect to material facts in applications and other documents required by the immigration laws. No reasonable trier of fact listening to those conversations can conclude that Archer was a knowing participant in the conspiracy. The Government's evidence was that Gulistan appeared at the law office on May 21, 2007, and June 7, 2007. In the first recording Archer is not present, and Gulistan clearly tells Rukhsana that he was here in 1981, and when he responds no to the question of whether he stayed in this country for eight or nine years, from 1981 to '90, he is asked by Rukhsana "then why did you file this case" which he replies "You people did this case. What do I know? If I could read, then I would not have asked you. If I were educated and I could

understand these things, I would not have asked you." In response to Gulistan's claim of ignorance as to the contents of his application the recording is clear that Ruksana then states to Gulistan "Gulistan, didn't we write these dates with you after asking you? Didn't we tell you?"

In the second recording where Gulistan tapes a conversation between himself, Archer and Ruksana there is no discussion as to advice, promises or any statements that were made to Gulistan at the time of his application in 2004, which is the period in question as the Archer is being accused of submitting false statements to immigration, knowing that the statements were false. The recording which shows that Gulistan and Archer cannot communicate absent a translator only has Archer stating in 2007 "I told him not to go to the interview-they are messing with them." There is nothing in that statement suggesting that Archer knew in 2004 when he signed Gulistan's application that the statements contained in the application was false. Instead, it shows that sometime after Gulistan received his interview notice that Archer discovered the petition had falsities. By telling Gulistan to withdraw the application was the only ethical and proper thing to do as once Archer discovered the fraud he could not in good conscious tell Gulistan to go to the interview. The comment that Archer then stated "they are messing with them" is nothing more than Archer not wanting to berate Gulistan and instead attempting to get Gulistan to withdraw the application and not commit more fraud. Especially, as in the fall of 2006 it was a known in the legal community that the Government was rejecting almost all of the applications for those individuals applying for CSSA Newman and LULAC. In fact, the Government's first witness Mel Shatzkamer from the Department of Homeland Security admitted that his agency had rejected ninety-seven (97%) percent of the seventy-nine thousand (79,000) applications it had received nationwide.

Likewise Archer's statements to Gulistan in June 2007 when asked if he should move and he said yes, does not indicate that Archer knew in 2004 when he signed Gulistan's application that the contents of the application were false. Instead, the comment shows an attorney who is has discovered after the application was submitted that the client had lied in the application; and the attorney trying to convey to the client who he discovered lied to an immigration official that his actions constituted a crime and he could be subject to arrest.

Gulistan's further testimony at trial that he had no idea that he signed an application for immigration benefits which contained false information, and that it was Rukhsana who filled out the application on his behalf is belied by the fact that Gulistan testified to asking various people what he could do to obtain immigration benefits; and then having people sign false affidavits for him that he was in the United States during the periods required in the program, and then being sworn by an immigration officer and lying to the immigration officer that he entered the country in 1981 and stayed for the requisite period. Gulistan admitted that he had every motive to lie as he testified that immediately upon being approached by Agent Silverman that he was promised with not being prosecuted provided he cooperated with Silverman in his investigation of Archer. It is respectfully submitted that Gulistan's testimony lacked all credibility, was entirely self serving, and should be utterly disregarded by this Court.

However, even to the extent that the Court credits Gulistan's testimony in parts, or its entirety, it is of no real consequence to the Court's evaluation and decision on this motion as Gulistan's credibility is irrelevant to the conspiracy and all the other counts for which Archer was convicted. All that matters is what the evidence shows and the rational jury could find as to what Archer knew or had reason to know about Gulistan being in the United States in 1981 and through May 4, 1988. At *no* point during the June 7, 2007, meeting is it stated by

Archer that he knew Gulistan or any other applicant did not qualify for the program, nor is there any statement by Rukhsana in the May 21, 2007 recording that Archer knew that Gulistan nor any other applicant did not qualified for the program. Gulistan admitted as did the other applicants who testified for the Government, Iris Ally, Nizar Ahmad and Mohammed Ally that the person who took down their information and filled out the application was Rukhsana as they never met with Archer.

There was nothing in the evidence that showed beyond a reasonable doubt that Archer knew the contents of the applications were false. The applicants all testified to not being very educated individuals and two of the four applicants who testified spoke Urdu a language only spoken by the co-defendant Rukhsana. The Application that was signed by the applicants only required someone to read the question to the applicant and the applicant to answer the question. Thus, for an attorney to have his assistant especially one that speaks the same foreign language of the applicants, ask the questions on the application to the applicant is not out of the ordinary. While it is possible that a trier of fact could find after the conclusion of all of the evidence that Archer, in his role as attorney was not properly supervising his assistant and/or that he was negligent in not meeting with the clients and allowing his assistant Rukhsana to do the client interview and fill out the applications however it does not mean that he was a member of a conspiracy. Furthermore, whether Rukhsana and/or the applicants had conspiratorial objectives does not, by the mere fact that Archer signed his name to the applications, prove that he was part of the conspiracy. The defense submits that the jury was thoroughly confused on this issue as their conviction of Archer on *any* of the charges demonstrates a total inability between bona fide legal work by an attorney, with knowingly and intentionally aiding a conspiracy.

What bears repeating is that <u>every single act</u> that the Government claims points to or demonstrates Archer's guilt, equally supports a theory of innocence. Nowhere in the recordings is Gulistan heard telling Archer that he did not enter the United States in 1981 nor that Archer knew in at the time the application was submitted that Gulistan had not entered the United States in 1981 and stayed for the requisite period of time. All the evidence presented against Archer supports the theory that Archer was an unknowing participant in this conspiracy. There is nothing in the recordings or in the testimony of the witnesses that would allow a rational jury to fairly conclude that Archer knew the statements in the applications were false. Every single piece of evidence introduced by the Government to support its theory of guilt, equally supports a theory of innocence.

What the Government is suggesting is that Archer as an attorney had to know everything that took place in his office by his employee and that he should be held strictly liable for the acts that took place. As Archer was not a party to the conversations when the applicants gave their information to Rukhsana for the CSS Newman LULAC program, and there is no evidence to suggest, much less prove beyond a reasonable doubt, that he was aware of or became a member of the conspiracy. The fact of the matter is that Archer signed the applications and submitted a notice of appearance as attorney because he believed the contents of the application to be true. Archer was simply lawfully assisting in the preparation of immigration forms for clients he believed met the criteria for the program. There was absolutely no evidence produced that Archer knew the information in the applications were false. The only circumstantial evidence produced to purportedly link Archer to the criminal acts was (1) that his assistant the co-defendant met, interviewed the clients, filled out the applications (2) that Archer signed the applications, (3) that the co-defendant was Archer's legal secretary. This is a far different

situation than for example, United States v. Walter 191 F.3d 329 (2nd Cir. 199), cert. denied, 529 U.S. 1080, 120 S. Ct. 1702, 146 L.E.d2d 506(2000), where two attorneys were convicted of conspiracy, mail fraud, and making false statements in conjunction with the filing of asylum applications to the INS. In that case there was evidence that the attorneys met with the clients face-to-face, advised the clients to sign blank affidavits, that when the clients asked about the false statements the attorneys told them they needed to say that to get their asylum applications approved, and told his employees what to write down in the applications. No such evidence was presented against Archer, there was not one piece of evidence from which the jury could reasonable conclude that he consciously knew that the contents of the applications were false and that he intentionally assisted in any way.

There was simply no evidence from which the jurors could reasonably infer that Archer knew what was said or not said to Rukhsana or that he intentionally assisted with the practice of submitting false statements to INS. To allow these convictions to stand would be akin to saying that every employer is criminally liable for the crimes of his employees. Certainly, civil liability does not attach so readily to an employer, and criminal responsibility cannot constitutionally be so inferred. See United States v. Phillips Jr. 543 F. 3d 1197 - Court of Appeals, 10th Circuit 2008, where the Court held,

> that a reasonable jury could not infer from the mere fact that Mr. Phillips was the only lawyer in the office that he was aware of every illegal action committed by his employees and the he approved, or even encouraged the action. Such an inference would subject the supervising lawyers in a law firm to something approaching strict criminal liability for the acts of their employees. To be sure, a lawyer generally has a duty under rules of professional responsibility to closely supervise his employees, and a failure to ensure compliance with all laws might constitute negligent supervision subjecting him to bar investigation or, perhaps civil liability.... But in a criminal case, the jury cannot presume without any direct evidence of the nature of his supervision of firm employees, that a lawyer acted in conformity with professional rules. The Government makes no claim that it offered proof

regarding Mr. Phillips actual supervision of his employees. We permit a jury
"to draw reasonable inferences from basic to ultimate facts,"
Jacskon v. Virginia 443 U.S.307, 319 (1979), but inferring that Mr. Phillips'
closely supervised all employees' actions, without proof, comes close to the
"speculation and conjecture" that we do not permit.
United States v. Isaac-Sigala, 448 F. 3d 1206, 1210 (10th Cir. 2006) (citing
United States v. Jones, 49 F.3d 628, 632 (10th Cir. 1995)).

## III.  Visa Fraud (Counts Two, Three and Five)

In order for the jury to return a verdict of guilty on either of the three visa fraud counts with

respect to Iris Ally, Gulistan, and Nizar Ahmad, the jury was required to find the following

element beyond a reasonable doubt:

> First, that Archer subscribed or presented a false statement as alleged in the
>
> Indictment;
>
> Second, that the statement was presented in a document required by the
>
> immigration laws or regulations;
>
> Third, that the statement was made under penalty of perjury;
>
> Fourth, that the statement was false as to a material fact;
>
> Fifth, that Archer knew the statement was false when presented.

The evidence presented at trial would lead any rational trier of fact to fairly conclude that

he Government did not meets its burden with regard to the element of Archer knowing that the

statement was false when either subscribed or presented. Specifically the evidence at trial

showed that Archer was never told by any of the applicants and/or Rukhsana that the applicants

did not enter the United States prior to 1981 and stay the requisite period of time.

What the trial record confirms is that at the very least, all of the evidence introduced by

the Government with regard to its theory of Archer's guilty, equally supports a theory of

innocence. This is particularly so since it remains the defense's position that the jury was simply

unable to distinguish between Archer's legitimate legal work which he signed under a good faith belief from that of actions in furtherance of any criminal conspiracy. It is respectfully submitted that the jury took many liberties, finding inferences in favor of the Government where no justifiable reasonable inferences or conclusions existed to prove the elements beyond a reasonable doubt. There is nothing in the evidence which can show beyond a reasonable doubt that Archer knew the statements he was subscribing and sending to immigration had false information.

IV,     Legal Standard under Rule 33

A motion for a new trial under Rule 33 of the Federal Rules of Criminal Procedure may be granted, "if the interest of justice so require." Fed. R. Crim. P. 33 The rule gives the trial court broad discretion… "to set aside a jury verdict and order a new trial to avert a perceived miscarriage of justice." United Sates v. Ferguson, 246 F.3d at 133(quoting United States v. Sanchez, 969 F.2d 1409, 1413 (2d Cir. 1992)). A district court must be satisfied that "competent, satisfactory and sufficient evidence" in the record supports the jury verdict. United States v. Ferguson, 246 F.3d at 134. While it is well-settled that "motions for a new trial are disfavored in this Circuit, "United States v. Gambino, 59 F.3d 353, 364 (2d Cir. 1995), and recognized that the defendant bears the burden of proving the necessity of a new trial, United Staes v. Sasso, 59 F.3d. 341, 350 (2d Cir. 1995), a Court has much broader discretion under Rule 33 than it does under Rule 29, and can upset the jury's verdict "where exceptional circumstances can be demonstrated." United States v. Sanchez, 969 F.2d at 1414.

"The ultimate test on a Rule 33 motion is whether letting a guilty verdict stand would be a manifest injustice…The district court must examine the entire case, take into account all facts and circumstances, and make an objective evaluation. 'There must be a real concern than an

Page | 23

innocent person may have been convicted."" United States v. D'Angelo,2004 WL315237

(EDNY 2004) *29 citing U.S. v. Ferguson, 246 F.3d at 133-134.

As stated by the court in D'Angelo, such a motion may be granted where this Court

answers no to the following question: "Am I satisfied that competent, satisfactory and sufficient

evidence in this record supports the jury's finding that this defendant is guilty beyond a

reasonable doubt?:"

In granting the defendant's motion(s) in D'Angelo, the Court wrote:

> The implausibility of the government's case was not limited to its overarching
> theory. It surfaced in details that are almost too numerous to mention. Viewed
> individually, they are all troublesome. Viewed as a whole, they render the
> jury's verdict indefensible

There words could have been written about the Government's case against Archer herein,

and nothing could be more true in this instance. As has been set forth throughout this

memorandum, this is nothing less than a tragic situation where the jury was wholly unable to

differentiate between acts of lawful legal work, and those acts which would have been in

furtherance of a conspiracy to commit visa fraud. The jury lacked the legal sophistication and the

wherewithal to appreciate the distinctions between practicing law based on a good faith belief

and subscribing statements under the belief that the statements were true and the criminal act of

signing as true statements that the subscriber in this instant Archer was unaware was false.

The Eight Circuit Court of Appeals, in United States v. Dodd, 391F. 3d 930 (8th Cir.

2004), affirmed the District Court's grant of a new trial, pursuant to Rule 33, writing:

> ... it was within the District Court's province to weigh the evidence,
> disbelieve witnesses, and grant a new trial-even in the face of substantial
> evidence. On appeal, the government has dutifully rehashed the evidence that
> Dodd possessed and distributed drugs, but the District Court assumed these
> two facts in reaching its conclusion regarding Dodd's conviction on the
> conspiracy charge. The District Court granted a new trial because it was "left
> with a perpetual 'bad taste' in its mouth over the nature, quantity, and

character of evidence" of Dodd's involvement in the conspiracy. In these circumstances, we cannot say the District Court abused its discretion in granting Dodd's motion for a new trial. Dodd, 391 F.3dx at 935 (Emphasis Supplied.)

Indeed, the instant case also leaves "a perpetual bad taste in the mouth" over the nature, quantity, and character of evidence against Archer-especially since there is no evidence to support the Government's contention that Archer knew the statements in the application were false. The government has insinuated that that Archer had to know the information in the applications were false, and insinuated that Archer as an attorney had an obligation to verify the information given to him by his clients. The jury was obviously unable to appreciate or see beyond the insinuation leaving then a very unique case where there is an actual, genuine and real concern than an innocent person may have been convicted. In reviewing all of the facts and evidence submitted during the trial, it is clear that this case is nothing less than a situation where the jury was undisputedly confused and wholly unable to differentiae between the defendant's separate conduct, as well as what was lawful work namely an attorney certifying that the information in an application was true based on his good faith belief and the unlawful act of certifying as true a statement the attorney knew to be false. To the jury Archer's signature on the notice of appearance without more was sufficient to convict.

The defense contends, it is logical to find that Archer was found guilty of the Conspiracy count for no other reason other than because he signed statements in an application that was submitted to immigration and that the statements were later, after proven to be false, and the jury assumed that because he was the attorney he had to know the contents of the affidavits were false and/or the jury believed it was the obligation of the attorney to investigate the clients statements.

The crucial fact to consider in evaluating this evidence is that Archer did not speak to the individuals whose information later turned out to be false, there is no evidence that he knew the contents of the applications were false, and the testimony of the Government's witness Mel Shatzkamer was clear that the immigration files of one third of the applicants for whom Archer submitted applications for showed evidence of attorney shopping and there was no evidence Archer was aware of the attorney shopping.

In reviewing the evidence or lack thereof, the defense submits that what happened here with respect to Archer, is nothing less than a total and tragic miscarriage of justice. The Government's overreaching theory devoid of any factual support renders the jury's verdict indefensible. Archer asks this Court to examine the entirely of the evidence presented in this case. Upon such examination, it is respectfully submitted that there **is** a reasonable doubt that Archer is guilty and for this Court to allow the guilty verdict to stand will be a manifest injustice.

Wherefore, based on all the reasons set forth above, Archer's motion for a judgment of acquittal pursuant to Rule 29(c) of the Federal Rules of Criminal Procedure and/or motion for a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure must be granted in their entirety; or alternatively a hearing be granted on both motions

Dated: April 16, 2010
Ridgewood, New York

Yours, etc.

_____/s/_____
KARINA E. ALOMAR, ESQ.
Counsel for Thomas Archer

Alomar & Associates P.C.
60-89 Myrtle Avenue
Ridgewood, NY 11385
Telephone No.: (718) 456-1845
Fax No.: (718) 386-9299

======NOTICE OF ENTRY======

PLEASE TAKE NOTICE that the within is a (certified) true copy of a

Duly entered in the office of the Clerk of the within named court on

Dated,

Yours, etc.
ALOMAR & ASSOCIATES., PC.
Attorney for the DEFENDANT
THOMAS ARCHER
Office and Telephone
60-89 Myrtle Avenue
Ridgewood, NY 11385
Phone: (718) 456-1845
FAX: (718) 386-9299

To:

Attorney(s) for

======NOTICE OF SETTLEMENT======
PLEASE TAKE NOTICE that an order of Which the within is a true copy will be Presented for
settlement to the Hon.
One of the judges of the within Named Court, at

On

At

Dated,

Yours etc.
ALOMAR & ASSOCIATES, PC
Attorney for the Defendant
THOMAS ARCHER
Office and Telephone
60-89 Myrtle Avenue
RIDGEWOOD, NEW YORK 11385
Phone: (718) 456-1845
FAX: (718) 386-9299

To:

Attorney(s) for

---

Case No. 08 CR 288

UNITED STATES DISTRICT
OF NEW YORK

UNITED STATES OF AMERICA

-AGAINST-

THOMAS ARCHER and RUKHSANA
RAFIQUE

Signature Rule 130-1

ALOMAR & ASSOCIATES, PC
ATTORNEY FOR DEFENDANT
OFFICE AND TELEPHONE ADDRESS.
60-89
RIDGEWOOD
Phone:
Fax:

To:
Mildred Whalen, Esq.
Federal Defenders of New York
Attorney for
Rukhsana
One Pierrepont Plaza, 16 Floor
Brooklyn, New York 11201

Benton J. Campbell
United States Attorney
Eastern District of New York
Attention: Amir H. Caspari
Assistant U.S. Attorney
271 Cadman Plaza East
Brooklyn, NY 11201

Service of a copy of the within is
hereby admitted.

Date

Attorney(s) for